**BOWLES, Estate of, In re, Plaintiff-Appellee, v. HEIRS OF SUSAN HARKNESS BOWLES et al, Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22564. Decided August 24, 1953.

T. G. Thompson, Baker, Hostetler & Patterson, Cleveland, Amerman, McHenry, Jones & Morgan, Canton, for plaintiffs-appellants.

Pickrel, Schaeffer & Ebeling, Dayton, Sayre, Vail & Steele, Klein, Diehm & Farber, Cleveland, William A. Finn, Toledo, for defendants-appellees.

## OPINION

By SKEEL, J.:

This appeal comes to this court on questions of law from a judgment or final order of the probate court of Cuyahoga County, refusing to admit to probate the alleged lost last will and testament and the original codicil of Susan Harkness Bowles. The application signed by Charles A. Morgan sets forth in part that Susan Harkness Bowles, a resident of Cuya-

hoga County, died November 17, 1951. At the time of her death, she was a ward of the probate court, this applicant having been appointed guardian of her person and estate on September 15, 1950, it being found by the court that she was then an incompetent person. It is further alleged that on November 9, 1946, the deceased then being of sound mind and memory executed and published her last will and testament in the manner provided by law; that on August 17, 1948, the deceased executed a codicil to her last will and testament in which she, except for one change made by the codicil, ratified and confirmed all of the provisions of her said will executed November 9, 1946. That before her death said will, without her knowledge and without any desire or intent on her part to revoke the same, was lost and cannot now be found. A conformed copy of said will and also a copy of the codicil is attached to the application.

It is further alleged that there is no surviving spouse and that the applicant is an interested person, being a legatee under the will. The application then sets forth the names of persons known to the applicant who might be entitled to some interest in the estate, if the deceased died intestate. Thirteen names are set forth, all designated as being cousins of the deceased, it being further alleged that there may be others of which the applicant has no knowledge. The applicant then requested that the provisions of the conformed copy and the codicil be entered for probate as the last will and testament of the deceased.

There are three principal beneficiaries under the will and codicil; Western Reserve University which is to receive under said will the greatest share of the estate, that is the income from the residuum held in trust to establish or support a professorship in the name of John Reynolds Harkness, uncle of the deceased (in whose family Miss Bowles was raised), in the College of Arts & Sciences of the University; Mr. Charles A. Morgan (applicant herein) a bequest of $100,000.00, and Miss Rose Tulley, housekeeper and companion, $100.00 for each year of service while in deceased's employ, and by the terms of the codicil an annuity of $400.00 per month during life. There were six other annuities provided for, totalling $1050 per month, as well as a bequest of an amount equal to $100.00 per year for each year of service to the other employees of the testator.

Miss Bowles, during the greater part of her adult life, was the trusted companion of Mrs. Laura Price Briggs, a woman of great wealth. Upon the death of Mrs. Briggs, Miss Bowles became the executrix and trustee under her benefactor's will

and was the recipient of a generous share in the estate. In fact, the greater part of Miss Bowles' estate came from Mrs. Briggs, that is a legacy of $100,000.00 and the income of the residuary estate amounting to approximately $150,000.00 per year and such income as was derived for her services as executrix and trustee.

Miss Bowles became acquainted with Charles A. Morgan in 1923 in connection with the administration of the Ira A. Price estate (brother of Mrs. Briggs) Mr. Morgan then being an officer in the trust department of the Union Trust Company. After the Union Trust Company closed, Mr. Morgan became a trust officer and assistant vice president of the National City Bank of Cleveland, where he continued his business relations with Miss Bowles in connection with his work for Mrs. Briggs, and, upon the death of Mrs. Briggs in 1941, gave assistance to Miss Bowles in carrying our her duties as executrix and trustee of the Briggs estate. Miss Rose Tulley was employed as housekeeper and personal companion for Miss Bowles in February, 1944, and continued (except for about three months at the beginning of 1945) in that capacity until Miss Bowles' death in November, 1951.

Mr. T. G. Thompson, a lawyer at the Cuyahoga Bar, represented Miss Bowles in her personal matters and as executrix and trustee of the Briggs estate from 1940 until her death in 1951. In 1946 he was employed to draw her will. Much care was expended in developing a plan for thus disposing of her property. After two or three drafts of a proposed will were gone over with great care, the final draft was then prepared and explained to her and was then executed in Mr. Morgan's office at the National City Bank.

The will, after being executed as provided by law, with three attesting witnesses, was delivered to Miss Bowles. She also received a conformed copy in an envelope on which Mr. Morgan wrote "Miss Susan H. Bowles, 13515 Shaker Boulevard." Miss Bowles was instructed that it would be best to put the will in her safe deposit box in the Union Bank of Commerce.

· In August, 1948, Miss Bowles engaged Mr. Thompson to draft a codicil to her will, providing for an annuity to Rose Tulley of $400.00 per month. Miss Tulley had then been in her services for over four years. The codicil ratified and affirmed all of the other provisions of her last will and testament as executed November 6, 1946.

During May, 1950, Miss Bowles became seriously ill. Her physical and mental condition thereafter is said to have deteriorated gradually so that upon an application being filed to put her under guardianship, the court found her to be

an incompetent person and appointed Charles A. Morgan guardian of her estate and person in September, 1950.

Upon appointment as guardian Mr. Morgan, together with Miss Tulley, made a search for the will but could not find it. However, the codicil was found among some of her papers in her apartment at 13515 Shaker Boulevard. When Mr. Morgan got access to the safe deposit box there were no papers of value therein but he discovered the envelope which was given to Miss Bowles by Mr. Morgan and Mr. Thompson the day the will was executed. In the envelope was found the conformed copy of the will as she received it on November 9, 1946 and Miss Bowles had written on the envelope above her name (as written by Mr. Morgan) the words "Last Will" which was underscored by two lines and below her name were the words in her handwriting "Last Will Nov. 9th, 1946." Upon the death of Miss Bowles a further search was made for the will but it could not then and has not since been found.

Upon trial of the application to probate the last will and testament of Susan Harkness Bowles, dated November 9, 1946, as a last will, it being claimed by the proponents of the will that it was lost during the lifetime of the deceased without her knowledge, the court found that the provisions of said will had been satisfactorily established and that it had been executed as provided by law. The only other justiciable question to be decided on such application was whether or not the deceased before her death had knowledge that the will had been lost, the statute providing that such last will if lost during the lifetime of the deceased, shall be probated if * * * "lack of knowledge of such loss * * * can be proved by clear and convincing testimony. * * *" The court in refusing probate and overruling the application of Western Reserve University to intervene said in part:

"It is presumed that the will which was lost was destroyed by the testator with intention of revoking it and that testimony can be overcome, that presumption can be overcome only by the **best kind of evidence.** The court didn't feel that that was presented and I am prepared now to refuse your application to intervene for the reasons that I have indicated." (Emphasis added.)

The trial of this proceeding began on February 14, 1952. The opponents of the will moved for an exclusion of witness. Miss Tulley (one of the persons interested in having the will probated) was in the court room and when Mr. Morgan, Jr., was asked if he expected to use her as a witness and when he answered that he would, over his objection she was excluded by the court until called to testify.

On the 8th day of April, 1952, after the applicant had submitted his case and briefs were filed both by the applicant and the opponents, Western Reserve University filed a motion seeking the right to intervene and produce additional evidence. After argument the motion to intervene was overruled and the court entered its order refusing to admit the said last will to probate.

Motions for new trial were filed April 18, 1952 by Western Reserve University, Rose Tulley, Charles A. Morgan and Geraldine Hart Brooks and her sister, Dorothy E. Hart (both residents of Warren, Ohio who had not been served with notice of the proceeding as provided by law) and who were daughters of Helen Reynolds Hart, one of the relatives who was to receive an annuity under the will and in case of her death then her above mentioned daughters were to divide such annuity. Helen Reynolds Hart was a cousin (the record casts doubt as to whether she was a first or second cousin) of Susan Harkness Bowles. Affidavits were filed with these motions, setting forth additional evidence which would be produced to support the contentions of the proponents of the will. Without further hearing, these motions were overruled.

The appellants herein claim the following errors:

1. In refusing to admit to probate the last will and testament of Susan Harkness Bowles.

2. In refusing to admit to probate the original codicil together with a copy of the lost will, incorporated by reference in the codicil.

3. In refusing to admit the original codicil to probate.

4. In excluding Rose Tulley from the hearing Feb. 14, 1952 although she was an interested person in the proceeding.

5. In overruling the serveral motions for new trial.

6. In the rejection of evidence offered on behalf of the proponents of the last will and original codicil.

7. The judgment is against the manifest weight of the evidence.

From the foregoing recital of the facts it is made to appear that there is but one issue of fact to be decided, that is the testator's lack of knowledge that her will was lost and that the principal legal question is with regard to quantum of proof required to establish such question of fact to permit and require the probate judge to admit the alleged "lost" will (that is lost during the lifetime of the testator) to probate. There is no dispute presented with regard to the provisions of the will or that it was properly executed. Many of the cases cited by the opponents appellees herein are concerned with establishing the contents of an alleged lost or destroyed will, and

whether such will was properly executed. They are also concerned with the question of whether the loss occurred before or after the death of the testator.

The case of **Cole v. McClure, 88 Oh St 1,** 102 N. E. 264, was a will contest case beginning in the common pleas court. The deceased left a surviving spouse (there were no children) who under the claimed will (which was admitted to probate by the probate court) was to receive a life estate in her husband's property (all land acquired by purchase) and upon her death such property was to pass to the brothers and sisters of the deceased. The only question decided by the court had to do with the degree of proof required to establish the contents of the will and whether such will was still in existence after the testator was declared insane. On these two questions the court said:

2. "To establish a lost or destroyed will the evidence of its **execution** and its **contents** must be clear, strong, positive, free from bias and convincing beyond a reasonable doubt."

3. "Where a will has been lost or destroyed before the death of the testator, the law presumes that he revoked it; and where he became insane after he made the will, the evidence to overcome this presumption must be certain, satisfactory and conclusive that it was unrevoked and in existence after he became 'incapable by reason of insanity to make a will.'" (Emphasis added.)

The case of **Behrens v. Behrens, 47 Oh St 323,** 25 N. E. 209, was also a will contest case. Here again the existence of the alleged lost will after the death of the testator was the question involved. The court stated the issues tried as follows on page 328:

"After his decease, it was discovered that his will had been lost or destroyed, and the question arose, whether the will was lost or destroyed prior or subsequent to the death of the testator, and if before his death, whether or not it was destroyed by the testator himself, with the intention of revoking the same. On the application of George Behrens, the probate court found that the will was not revoked by the testator, but that it had been lost or destroyed subsequent to his death and thereupon established its contents to be as in the alleged copy produced in court and admitted the same to probate."

The court held: (syllabus)

"1. Where the probate court has found and established the contents of a lost, spoliated or destroyed will, in a future proceeding to contest the validity of such will, the order of probate court will be prima facie evidence of the due attestation,

execution, **validity** and **contents** of the will, and the burden of proof will be on the contestants to invalidate such will.

"2. When a will, once known to exist, and to have been in the custody of the testator, cannot be found after his decease, the legal presumption is, that it was destroyed by the testator with the intention of revoking it.

"3. To strengthen such presumption, it is competent to prove the declarations of the testator after making the will, that he had destroyed or intended to destroy the same." (Emphasis added.)

These cases, and others upon the same subject, do not deal with the question here presented. The statute, as amended in 1932, provides the only way that a will, shown to have been lost during the lifetime of the testator, can, upon satisfactory proof of its contents and that it was properly executed, be probated. Here the court is not concerned with the presumption of revocation. It should be observed that if the deceased did not know of the loss of her will, there could be no presumption of revocation. What the statute provides is that the proponent of a will lost during the lifetime of the testator must show the testator's lack of knowledge of such loss, by clear and convincing evidence. The degree of proof is therefore fixed by the statute and not the case law dealing with a different subject.

**McWilliams v. Central Trust Co., 51 Oh Ap 246,** at **page 248,** 200 N. E. 532.

The lack of knowledge of the loss of a will is, of necessity, a negative fact. The means of proving lack of knowledge must involve the acts and words of the testator and all the surrounding circumstances. It is not to the detriment of the proponent's case that all or a great part of his evidence is in character circumstantial. The plan of the will, in remembering the persons who, or charities that would be the natural objects of the testator's bounty, the care with which the will was drawn, the remarks of the testator thereafter that show a continuation of the state of mind of the testator at the time the will was drawn or small changes made in the general plan of the will, by codicils, in which all are relevant in support of the testator's lack of knowledge of the loss of the will.

The probate court erroneously rejected evidence offered to establish the state of mind of the testator and her regard for those she had remembered in her will. The court also refused to hear evidence tendered by Western Reserve University as shown by the affidavits attached to its motion to intervene, as was equally true of the motions for new trial

of Dorothy Hart and Geraldine Hart Brooks. This is an ex parte proceeding. The witnesses must, of necessity, be those called by the proponents of the will. It is just as serious a mistake to take away the right of a person to distribute his property after death by will, which right is provided by law, as it is to attempt to fix the terms of a will differently than those intended by a decedent.

In considering the rejection of competent evidence it is necessary to allude to one of the appellee's theories (not supported by any evidence) argued as a reason why the will cannot now be found and why the court should invoke the presumption that the testator destroyed it with intent to revoke its provisions. It is argued that after mature reflection, the testator must have concluded that her relatives should be considered as entitled to her estate as against strangers. This contention makes the proffered testimony absolutely relevant. The appellees are not of the immediate family of the deceased. Their relationship is at best in the fourth degree and if we are to take the evidence of the attitude of the deceased to the opponents and the opponents' attitude toward the deceased at face value, they and the deceased were not compatible, while the evidence which was admitted as to testator's relationship (both business and social) with the persons remembered in the will, it tended to establish very close friendly relationships. The evidence excluded therefore was directly competent on a vital question to be established in this ex parte proceeding.

As indicated above, the statutory rule is that the lack of knowledge on the part of the testator during her life that her will had been lost, where the claim of the proponents is that such is the fact, is that the proponents must establish such lack of knowledge "by clear and convincing testimony." The court, at the conclusion of hearing the motion to intervene and in refusing to admit the will and codicil to probate, said as above quoted, that the proponents must establish the testator's lack of knowledge that the will had been lost, by "the best evidence." By this, the court unquestionably meant, as contended for by the appellees, that the proponent's case must be established beyond a reasonable doubt. This is a greater degree of proof than is provided for by statute, and in so holding the court committed prejudicial error against the claims of the proponents.

In the case of Goodale v. Murray, 289 N. W. 450 (Sup. Ct. Iowa, 1940) the 17th headnote provides:

"Although one who seeks to establish lost will should be required to produce evidence that is clear, convincing and

satisfactory, yet burden put upon him should not be prohibitive and it is not necessary that presumption of revocation be overcome by evidence that is free from doubt."

For the foregoing reasons, we must sustain claims of error numbers 4, 5 and 6, that is in overruling the several motions for new trial, in rejecting competent evidence.

One other question must be considered with respect to the motions for new trial of Dorothy Hart and Geraldine Hart Brooks. The record discloses that they were not served with notice of the hearing.

Sec. 10504-36 GC provides:

"When application is made to the probate court to admit to probate a will duly executed and lost, spoliated or destroyed, the party seeking to prove it shall give a written notice to the surviving spouse, and to the next of kin of the testator, if any, known to be resident of the state, and to all persons whose interest it may be to resist the probate, known to reside in the county where the tetator resided at the time of his death, not less than five days before the day on which such proof is to be made, or give notice, by publication in a newspaper printed in the county, not less than thirty days before the day set for hearing such proof."

Except for the last part of the section providing for either notice or service of publication as to those who are residents of the county and might be interested in resisting the probate of the will, it reads exactly like §10504-17 GC which provides for notice of probate in will cases generally. Prior to the amendment of the Probate Code in 1932, §10504-17 GC was known as §10507 GC and before amended, read:

"No will shall be admitted to probate without notice to the widow or husband and next of kin of the testator, if any, resident in the state in such manner and for such time as the probate court directs."

In the case of Scholl v. Scholl, 123 Oh St 1, 173 N. E. 305, the court in considering §10507 GC said:

"1. The requirement of §10507 GC, that upon an application for the probate of a will notice shall be given to the widow or husband and next of kin of the testator resident of the state, is mandatory and juridictional.

"2. An order of probate of a will without notice to persons entitled to notice under the provisions of §10507 GC, and without waiver by such persons, is void and is subject to direct attack by those who neither received notice nor waived service of notice.

"3. Mere knowledge of the death of the decedent and subsequent information of the order of probate will not estop such

next of kin from attacking the order of probate, where it is not shown that the proponents of the will were misled by silence or delay, or that they were prejudiced thereby."

See also, **Young v. Guella, et al, 67 Oh Ap 11, 35 N. E. 997,** where the court said:

"1. An order of the probate court admitting a will to probate made without the service of notice upon the next of kin resident in this state, as required by §10504-17 GC, and without waiver thereof, is void.

"2. The fact that a person aggrieved by such order could obtain relief in the probate court by virtue of statutory provisions, does not preclude such person from recourse to a court of general equity jurisdiction by original action, to have such order declared to be void.

"3. The grant of a limited equity jurisdiction to the probate court, under the provisions of §10501-53 and 10501-17 GC does not oust the court of common pleas from its original equity jurisdiction to declare void the judgments and orders of the probate court for lack of jurisdiction."

We hold that the amendment of the statute by adding the words "known to be" before the words, "resident of the state" did not relieve the court from requiring notice to the next of kin of the testator, who were then residents of the state of Ohio. Whether the Hart sisters were, in fact, next of kin, was a question of fact which when presented to the court on the motions for new trial, should have been determined or a new trial granted so that such question could have been thus judicially determined. If they were next of kin and not served with notice, the court would have been without jurisdiction. In any event, they were interested parties and should have been brought into the case as was equally true of Western Reserve University.

The circumstance that the judgment of the court refusing to probate the alleged lost last will and testament of Susan Harkness Bowles, upon the application of Charles A. Morgan, would not preclude other interested parties who were not made parties to such proceeding and were without notice, from themselves and on their behalf, presenting the same will for probate.

In the case of **Feuchter v. Keyl, 48 Oh St 357, 27 N. E. 860,** the court said in paragraph 2 of the syllabus:

"2. Where admission of a will to probate has been refused by the probate court, persons having no notice of the proceedings and refusal until too late to perfect an appeal to the court of common pleas from the order of refusal are not concluded thereby and may repropound the will notwithstanding the former order of refusal has not been vacated."

The statute giving the right to appeal to the common pleas court has been repealed but the rule of the case still stands and therefore it would serve both the ends of justice and prevent a multiplicity of lawsuits, to let all interested parties into the original action.

At the beginning of the trial, Rose Tulley, who was an interested party, as was self-evident both by the will and the codicil then before the court, was excluded from the court room by order of the court. She was not then represented by counsel. To thus exclude an interested party constituted error for which the judgment entered must be reversed.

Claim of error No. 2, has to do with the refusal of the court to probate the conformed copy of the will, and the original codicil, on the theory that the codicil brought into its provisions by reference the provisions of the original will. A reading of the codicil does not support this contention. What the codicil provides for is an annuity for Rose Tulley as an item not contained in but to be in addition to the provisions of the will as executed Nov. 9, 1946, the annuity to be paid out of the income from a trust fund created by the will. The operation of the only donative provision of the codicil is solely and totally dependent upon the effectiveness of the will. There is clearly no intent on the part of the testator to create a new will as of the date of the codicil. She believed her will was then in existence. The appellees agree that this is so. There could be no purpose, therefore, to create a new will by drawing into the codicil by reference the conformed copy of the will found in her safe deposit box. The executing of the codicil is almost irrefutable evidence that on the date of its execution, the testator believed the original will to be in existence and if it had been lost the testator did not know it. To attempt to show that the execution of the codicil created a new will by reaffirming the old, would be inconsistent. This claim of error must be overruled.

The facts as above set forth disclose that while the will could not be found upon search either at the time of the appointment of the guardian September 15, 1950, or after the death of the testator, November 17, 1951, the codicil executed as provided by law was found among the papers of the deceased shortly after the guardian was appointed. It is therefore claimed that since the will which was in existence when the codicil was executed and such codicil republished the will in its entirety, if the will was destroyed thereafter with intent to revoke it without a destruction of the codicil, the provisions of §10504-47 GC which does not permit a partial revocation of a will would be applicable. It is upon this basis that it is

contended that the destruction of a will without the destruction of the codicil would not constitute a revocation of the will.

Appellants rely on the case of **Coghlin v. Coghlin, 79 Oh St 71**. There the testator tore out one page of the original will which was recovered by a son and pasted together by the testator's wife and replaced in the will. The testator then took the will to his lawyer with the restored page and talked to him about executors and their compensation. One of the items on the torn page dealt with the appointment of the executor, with which subject he was not fully satisfied. A codicil changing this term of the will was drawn but not signed. The court held:

"1. In the contest of the validity of a will which has been admitted to probate, the ground of contest being that the testator in his life time had destroyed the will with the intention of revoking it, the allegation that the will was revoked is not sustained by evidence showing that the testator removed from the instrument and tore one of its several pages leaving the will otherwise intact and evincing an intention to preserve it.

"2. In such case, for the purpose of showing the intent with which the page had been removed, it is competent to show that after it has been restored the testator regarded the instrument as his will. **Behrens v. Behrens, 47 Oh St 323,** approved and followed."

On page 76 the court says:

"We recognize fully that there can be no partial revocation. And if a portion only of a will be erased or canceled with intent to revoke that part only but not with intent to revoke the whole will, the act will be ineffective, and if the canceled part can be restored or is legible the will should be admitted. including the canceled portion, as a valid part of the will. 'The ultimate question therefore is,—Did Dennis Coghlin intend to revoke only that part of the will which he tore up and threw in the wastebasket? Or did he intend to revoke the will as a whole? But in considering the pertinency of Mr. Waite's testimony, it becomes necessary to consider the relation of the part torn out to the balance of the will.'"

The facts of the Coghlin case are to be distinguished from the facts of the case now being considered, in this that in the Coghlin case only one page of the will was disturbed which fact was immediately known, it being clear from the evidence that there was no intention on the part of the testator to revoke his will in its entirety. All he wanted to do was to take out one provision. In the case before us, the original

will in its entirety is missing. All that can now be found is a codicil, the provisions of which cannot be carried out without the help of the provisions of the will creating the trust from which the annuity provided for there is to be paid. If it could be said, which claim the appellants deny in the basic part of this appeal, that the testatrix did dipose of the will with intent to revoke it, such act would also be conclusive as to the codicil which is completely dependent upon the will for its effectiveness. We must conclude, therefore, that this claim of error is not well taken.

The majority of the court also find that, upon a full and complete consideration of all of the evidence, a finding that the proponents of the will have not shown the testator's lack of knowledge that her will had been lost during her lifetime by clear and convincing proof is erroneous and prejudicial to their rights and the claim of error that the judgment of the court refusing to probate the will is against the manifest weight of the evidence is sustained.

The last claim of error is that even though the trial court correctly held that the original will should not be probated for failure of the proponents to establish the testatrix's lack of knowledge of the loss of her will by clear and convincing proof, yet the court should have probated the properly executed codicil as a partial testamentary disposition of the deceased's property. Here again, we must conclude that the codicil is so dependent on the will that it cannot be probated separate and apart from the will for the reasons above set forth.

For the reasons above set forth, the order of the probate court refusing to probate the alleged lost last will and testament and original codicil of Susan Harkness Bowles, is reversed and the cause is remanded for further proceedings according to law. Exceptions noted. Order see journal.

KOVACHY, J, concurs.
HURD, PJ, concurs in part—Dissents in part.

### CONCURRING AND DISSENTING OPINION

By HURD, PJ, concurring in part and dissenting in part:

I dissent from the opinion and judgment of the majority of the court in their reversal of the judgment of Probate Court on the asserted ground that said judgment is contrary to the manifest weight of the evidence.

Since a majority of the court may reverse on the weight of the evidence in a case tried to the court without the intervention of a jury thus requiring a new trial of the issues of fact, I see no advantage in a detailed discussion of the evi-

dence at this time. However, as I am not in accord with the majority with respect to the principles of law applicable to this issue, I deem it appropriate to express briefly my views referring only to so much of the evidence as may be necessary to point up the issue of law involved.

I cannot concur in the view expressed in the majority opinion that we are not here concerned with the presumption of revocation, and that the 1932 amendments of §§10504-35 and 10504-38 GC had the effect of changing the rule of law with respect to the presumption of destruction of the will by the testatrix animo revocandi as applied to the facts and circumstances of the present case.

The statute law of Ohio relating to the probate of lost, destroyed of spoliated wills is contained in §§10504-35 to 10504-40 inclusive, GC, all as amended effective January 1, 1932.

**Secs. 10504-35 and 10504-38 GC,** which are particularly pertinent to the issues in the present case read as follows:

"**Sec. 10504-35 GC. Lost, Spoliated or Destroyed Wills May Be Admitted To Probate.** The probate court may admit to probate a last will and testament which it is satisfied was executed according to the provisions of law in force at the time of its execution, and not revoked at the death of the testator, when such original will was lost, spoliated or destroyed subsequent to the death of such testator, or after he became incapable of making a will by reason of insanity, **or before the death of such testator if testator's lack of knowledge of such loss, spoliation or destruction can be proved by clear and convincing testimony,** and it cannot be produced in court in as full, ample and complete a manner as the court now admits to probate last wills and testaments, the originals of which are actually produced therein for probate." (Emphasis added.)

"**Sec. 10504-38 GC. Lost or Spoliated Wills May Be Probated, How.** If upon such proof, the court is satisfied that such last will and testament was executed in the mode provided by the law in force at the time of its execution, that its contents are substantially proved, that it was unrevoked at the death of the testator, and has been lost, spoliated or destroyed since his death, or his becoming incapable as aforesaid, **or before the death of the testator if his lack of knowledge of such loss, spoliation or destruction can be proved by clear and convincing testimony,** such court shall find and establish the contents of such will as near as can be ascertained, and cause them and the testimony taken in the case to be recorded in such court."

These sections are similar to former §§10543 and 10546 GC, respectively. The new portion which is identical in each section reads, "or before the death of the testator if his lack of knowledge of such loss, spoliation or destruction can be proved by clear and convincing testimony." These quoted words of the sections as amended are tantamount to saying that clear and convincing evidence is required to show that the testator did not lose or destroy the will with the intention of revoking it,/ but the legal presumption that he did so is not thereby destroyed, but remains until overcome by proof to the contrary. It may be argued that the prevailing presumption and the applicable statutes place a great burden upon the proponents of lost, destroyed, or spoliated wills, but in this connection it is well to observe that prior to the amendments of 1932 there was no provision at all in Ohio, statutory or otherwise, for the probate of a will that had been lost, destroyed or spoliated during the life of the testator.

Considering the evidence pertinent to this issue, it is undisputed that, following the execution of her will by the testatrix on November 9, 1946, it was taken by her into her sole custody and control and so remained for some period of time, the length thereof being uncertain. But, at her death November 17, 1951, the will could not be found. In fact, so far as the record before us discloses, it was never again seen by any person other than the testatrix. The evidence further shows that a guardian was appointed for the testatrix on or about September 15, 1950, and continued to act in that capacity until her death. But, neither the guardian nor any other person has been able to discover the original duly executed will although an unsigned copy thereof has been found.

It is well settled in Ohio that when a will once known to exist and to be in the custody of the testator cannot be found after his decease, a legal presumption arises that it was destroyed by the testator with the intention of revoking it. See second syllabus, of **Behrens v. Behrens, 47 Oh St 323,** 25 N. E. 209, 21 Am. St. Rep. 820. See also, **Cole v. McClure, 88 Oh St 1,** 102 N. E. 264 and the recent case of **In re Estate of Tyler, 159 Oh St 492.** See also, **41 O. Jur. Wills, Section 256, pages 425-426,** and other Ohio cases there cited.

This presumption of law is not only well settled in Ohio, but is in accord with the overwhelming weight of authority in other jurisdictions. See 57 Am. Jur. Wills, Section 549, pages 377-378, and supporting authorities there listed too numerous to cite here at length.

In the case of **In re Estate of Tyler, 159 Oh St 492,** decided May 27, 1953, our Supreme Court once again had occasion to

construe the sections of the General Code relating to the probate of lost, spoliated or destroyed wills. It should be emphasized, I think, that the Tyler case was decided some twenty-one years after the 1932 amendments to the code sections here cited and quoted. Nevertheless, the Supreme Court in that case reaffirmed the doctrine of presumptive revocation enunciated in Behrens v. Behrens and Cole v. McClure, supra. (See pages 497-498 and 502 of In re Estate of Tyler.) In the Tyler case, Judge Stewart, in an opinion speaking for a unanimous court, quoted verbatim §§10504-35, 10504-36, 10504-37 and 10504-38 GC, all as amended effective January 1, 1932, after which, as shown at pages 497 and 498, he quoted the entire syllabus of Cole v. McClure, supra. For the purposes of this discussion, I quote only paragraph 3 of the syllabus which reads as follows:

"3. **Where a will has been lost or destroyed before the death of the testator, the law presumes that he revoked it;** and where he became insane after he made the will, the evidence to overcome this presumption must be certain, satisfactory and conclusive that it was unrevoked and in existence after he became 'incapable by reason of insanity to make a will.'" (Emphasis added.)

Judge Stewart then declared at page 498 as follows:

"The same rule applies with reference to a will which has not been lost or destroyed but has been mutilated, even though it is proved, as it was in this case, that decedent properly executed it."

The opinion also quotes with approval from 57 Am. Juris. 378, Sec. 550. I quote only a part thereof as follows:

"It would be inconsistent **to hold that a total absence of the instrument sought to be probated raises a presumption that the testator destroyed it with intent to revoke it,** and to refuse to hold that the production of a mutilated instruction, shown to have been in the possession of the testator, cannot raise a presumption that the mutilation was done by the testator with intent to revoke the will." (Emphasis added.)

From these authoritative decisions, I conclude that, since the original will was in the sole custody and control of the testatrix from the time of its execution and could not be found at her death, there is a legal presumption that she destroyed it with the intention of revoking it. This presumption of revocation is, of coure, not conclusive, but may be overcome by circumstantial or other proof to the contrary. Behrens v. Behrens (supra). See also, **Hutson v. Hartley, 72 Oh St 262.** Therefore, under the issues of this case, the burden is cast upon the proponents to produce evidence suf-

ficient to overcome the presumption of destruction by the testatrix animo revocandi and to show by clear and convincing testimony that the original will was lost or destroyed before her death without her knowledge.

I need not here discuss the jurisdictional limitations imposed by law upon the Courts of Appeals of Ohio in reversing judgments of trial courts upon the weight of the evidence. Suffice it to state that a judgment of the trial court must be manifestly against the weight of the evidence to justify a reversal on that ground. This is particularly true where the law requires a higher quality and quantity of evidence than is sufficient in ordinary cases to support a judgment by the preponderance of evidence. (See Cole v. McClure, supra, syllabus one, approving **Ford v. Osborne, 45 Oh St 1.**)

Considering the prevailing presumption and the applicable statutes and the evidence now before us for review, I cannot find that the judgment of Probate Court should be reversed on the ground that it is contrary to the manifest weight of the evidence, and, for this reason, must register my dissent.

I concur in the judgment of reversal in respect to the following assignments of error:

"IV. The Probate Court erred in excluding Rose Tulley from the hearing of February 14, 1952 on the application to probate the will and codicil. Being an interested party and a proponent, she was entitled to be present as a matter of right.

"V. The Probate Court erred in denying the motion of the appellant, Western Reserve University, to intervene and present additional evidence. In view of the interest of the appellant as a principal beneficiary and the fact that the application was made prior to the entry of the court's decision, the motion should have been granted and the appellant allowed to present additional evidence as a proponent of the will.

"VIII. It appears from the evidence that the appellants, Geraldine Hart Brooks and Dorothy E. Hart, sisters, are cousins of decedent, who were not served with notice or summons as were thirteen other cousins as shown on the face of the record. The issue of whether they were next of kin should have been determined by the court.

"VI, VII and IX. In consideration of all of the foregoing, the motions of the several appellants for a new trial should have been granted for the reasons generally and more fully set forth in the majority opinion."