In re Estate of Steel.

[Cite as In re Estate of Steel, 8 Ohio Misc. 133.]

(No. 570699—Decided August 19, 1966.)

PROBATE OF WILL: Cuyahoga County Probate Court.

*Mr. Allen N. Corlett* and *Messrs. Roudebush, Adrion, Brown, Corlett & Ulrich,* for proponent.
*Mr. Dwight B. Buss* and *Messrs. Baker, Hostetler & Patterson,* for opponent.

BARTUNEK, J. This cause comes before the court on an appeal from the decision of a referee admitting certain writings to probate as the codicil and the last will and testament of Alexander Wilson Steel, deceased, under authority of Section 2107.26, Revised Code. The evidence fairly discloses the following facts.

On April 2, 1956, Alexander Wilson Steel, a man of 60 years, signed a will in the office of his lawyer, Jules Eshner, in Cleveland, Ohio. The will was properly executed and witnessed according to law. At the same time the original will was completed, Steel and his three witnesses executed and signed two exact carbon copies of the original will, as if each of these copies was the original. This was done according to the custom of the Eshner law office.

In addition to the making of certain minor bequests, the will created two separate trusts for the benefit of testator's second wife, Ruth, and specifically disinherited his two children by a prior marriage, stating that adequate provisions had already been made for them. The will named the Cleveland Trust Company as joint trustee of one of the trusts and as the successor executor of the will in the event that the testator's wife would be unable to serve as executrix. The will further directed that Jules Eshner be consulted in all legal matters pertaining to the estate or the trusts.

On January 31, 1957, Steel appeared in the office of another lawyer, Mark L. McCave, to execute a codicil to his will of April 2, 1956. The said codicil was duly executed and witnessed according to law, but, as was the custom of this law office, only

one writing, that being the original typewritten codicil, was executed by the testator and attested to by the witnesses.

The codicil merely changed the joint trustee of one of the trusts and the successor executor of the will from the Cleveland Trust Company to Douglas C. Oviatt, Jr., brother of testator's wife, and deleted all reference to Jules Eshner as the attorney to be consulted in reference to the estate and the trusts.

Sometime in May 1958, the exact date being unclear from the evidence, Alexander Wilson Steel was confined to the Hanna Pavilion of University Hospitals for mental illness, but, on May 28, 1958, he was in the office of his lawyer, Mark L. McCave, to execute a new last will and testament. This will was executed by Steel and attested to by three witnesses, who signed the original typewritten writing. One of the witnesses was McCave, Steel's attorney, and the other witnesses were Myron W. Ulrich and Harry M. Newman, who were attorneys associated at that time with McCave in the practice of law.

The new will was a restatement of the 1956 will as amended by the 1957 codicil and, in addition, the first three paragraphs stated that the signature page of the 1956 will "inadvertently has been torn and a part thereof is lost" and strongly set forth the desire of the testator to reaffirm all of the provisions of that will as amended by the codicil "in order to avoid any possible controversy concerning the validity of the aforesaid mutilated will and the codicil thereto made by me."

On October 9, 1958, Steel was found by this court to be suffering from degenerative brain disease, adjudged to be mentally ill, and was committed to Hawthornden State Hospital, where he subsequently died on March 25, 1959.

Steel's 1958 will was filed for probate by his second wife, Ruth, on August 29, 1960, and on April 14, 1964, in an action filed by the children of Steel's first marriage, this will was found not to be the last will of Alexander Steel by verdict of a jury in Cuyahoga County Common Pleas Court Case No. 741875.

Subsequently, the will of April 2, 1956, and the codicil thereto dated January 31, 1957, were considered for admission to probate, and, after hearing the evidence, the referee admitted same to probate on September 22, 1965, over the exceptions of Steel's children by a prior marriage.

The torn original of the 1956 will which is presented for our consideration clearly shows an even tearing of the signature page so as to remove the signatures therefrom without destroying or tearing any other part of the will. The carbon copies, however, are intact and each is completely executed and witnessed.

In presenting the case for the admission of the 1956 will to probate, two witnesses to the 1958 will which has been declared invalid, Ulrich and Newman, testified that Mark L. McCave stated in the presence of the testator on May 28, 1958, that the 1956 will had been inadvertently torn and that Steel nodded in agreement. There was no testimony as to any remarks by Steel himself, and, Mark L. McCave, attorney for the testator and a witness to the 1957 codicil and the 1958 will did not testify at any time.

The questions presented for consideration by this court to determine whether or not the 1956 will and the 1957 codicil can be admitted to probate are:

1. Are the executed and witnessed carbon copies of the 1956 will to be given the same force and effect as the original will?

2. Is the torn original of the 1956 will a lost, spoliated, or destroyed will qualified for admission to probate under the authority of Section 2107.26, Revised Code?

3. What effect does the codicil have on the original 1956 will?

4. Does the 1958 will with its special reference to the 1956 will and/or the statements made by the testator's attorney at the time of the signing of that will act to continue, reinforce and reiterate the 1956 will?

In answer to the first question, it seems so obvious, even before the pen has left the paper in the writing of it, that there can be but one original, effective, and dispositive instrument to be considered a last will and testament, and however so many copies of that original will, exact in every detail and executed by the testator and attested to by the witnesses there are, these copies remain just that: copies—copies useful to show what had existed in the case of a lost, spoliated, or destroyed will, but utterly ineffectual to be used as a substitute for the original will.

Perhaps because it is such a universally accepted point of law, there is a dearth of literature concerning the offering of executed and attested copies of a will to be accepted in lieu of the original last will and testament.

Section 2107.03, Revised Code, seems to indicate clearly that merely any writing is not sufficient to be the last will and testament, as it provides: "except oral wills, every last will and testament shall be in writing, but may be handwritten or type-written * * *,"
thus, it seems to this court, precluding executed and attested carbon copies.

Furthermore, *In re Estate of Woods*, 61 Ohio Law Abs. 548, a 1951 court of appeals case, held:

"When a person makes and executes his will in duplicate, retaining one copy himself and delivering the other copy for safekeeping to the person designated therein as executor, and upon his death the copy retained by the decedent cannot be found, there is a presumption the decedent has revoked such will.

"Without evidence overcoming such presumption or revocation the copy held by the person entrusted therewith cannot be admitted to probate."

So even in the case of a will incapable of being located, an executed copy thereof cannot be used in place of the original and therefore certainly a copy or copies of a mutilated will cannot be used to supplant the original and only valid instrument under the statute.

But counsel for the wife of the decedent claim that even if the executed copies of the original 1956 will are not admissible to probate, the torn original of that will and the codicil thereto are admissible to probate under the authority of Section 2107.-26, Revised Code, which provides:

"When an original will is lost, spoliated, or destroyed subsequent to the death of a testator, or before the death of such testator, if the testator's lack of knowledge of such loss, spoliation, or destruction can be proved by clear and convincing testimony, or after he became incapable of making a will by reason of insanity, and such will cannot be produced in the probate court in as complete a manner as the originals of last wills and testaments which are actually produced therein for probate,

the court may admit such lost, spoliated, or destroyed will to probate, if such court is satisfied the will was executed according to the law in force at the time of its execution and not revoked at the death of the testator.''

Before we can consider the provisions of this statute, however, we must determine whether or not the original will in its mutilated condition comes within the definitions of a lost, spoliated, or destroyed will.

*In re Murray*, 20 N. P. (N. S.) 305, defines these words as follows: ''A lost will is a will that cannot be found. A spoliated will may be a will which is mutilated or which is in part lost or destroyed. A destroyed will is said to be one that cannot be produced.''

Therefore, it can readily be seen that the will in question cannot be considered as lost or destroyed. Was it spoliated? Under the definition above and following the ruling of the court in *In re Estate of Downie*, 6 Ohio Misc. 36, 35 O. O. 2d 31, a 1966 case, which held: ''A spoliated will, such as is contemplated in Section 2107.26, Revised Code, refers to one which has been affected by some act of one other than the testator,'' we cannot conclude that the instrument concerning us here is a spoliated will.

We have only the faintest scintilla of evidence in this case that the will was mutilated by someone other than the testator, and that evidence comes from the testimony of Ulrich and Newman who heard their law office associate, Mark L. McCave, say that the will was inadvertently torn and saw the testator nod his head in agreement.

True, this same averment is recited in the 1958 will as well, which we shall go into more fully at a later time, but even if this evidence were of sufficient weight to bear upon this decision, it would also be of sufficient force to wrest the admission of this will from probate because of the very provisions in the statute pertaining to the admission of spoliated wills wherein Section 2107.26, Revised Code, emphatically requires that the testator must have a lack of knowledge of the spoliation in order for the spoliated will to be admissible.

Although largely referring to lost wills, a host of cases have held that clear and convincing evidence must be offered to

overcome the presumption that the will attempted to be admitted to probate under Section 2107.26, Revised Code, was not lost, spoliated, or destroyed without the knowledge of the testator prior to his death. *Cole* v. *McClure*, 88 Ohio St. 1; *Behrens* v. *Behrens*, 47 Ohio St. 323; *Chenoweth* v. *Cary*, 17 O. O. 76; and *In re Estate of Bowles*, 96 Ohio App. 265. And this impels us to the conclusion that this will does not qualify for admission to probate as a lost, spoliated, or destroyed will as set forth in the statute.

It has, however, been properly demonstrated that the testator executed a codicil to the 1956 will on January 31, 1957. This codicil was attested to and executed according to the law in force at that time, and it appears that the testator was of legal age, of sound mind and memory, and not under any restraint at that time. Does this then re-establish the validity of the 1956 will?

We think that the act of executing the codicil does not affect the issues in this case. Certainly, it must be presumed that at the time that the codicil was executed, the original will of April 2, 1956, was capable of coming into full force and effect. It must be presumed that the will was not "inadvertently * * * torn * * * and a part * * * lost" at that time. If it were mutilated in any way, certainly the testator's attorney would have rewritten the will and had the new will as properly executed and attested as was the codicil.

The only fact shown by the execution of codicil on the 1957 date was that the original will was in existence, was complete and regular on its face, and would have been effective upon the death of the testator had it remained in such a condition and otherwise unrevoked by the testator. But a codicil, however well preserved, is dependent upon a will for its force and effect and cannot be used to substitute for a will which is lost, or mutilated after the codicil was completed, as was set forth *In re Estate of Bowles*, 96 Ohio App. 265, in 1953 which held:

"Where a codicil is executed by a testator providing additional rights to beneficiaries under an existing will, which will is lost during the lifetime of the testator, provisions of the codicil being such that they are completely dependent upon the will for their effectiveness, the codicil cannot be admitted to

probate unless the will is also so admitted. Nor can such codicil be admitted to probate as a will on the basis that by its provisions the will is made part thereof by reference."

And further considering the codicil to a lost or spoliated will, we are impressed by the striking similarity of the instant case to *In re Ayres*, 36 Ohio Law Abs. 267, a 1940 case, which held:

"A higher degree of proof than the mere preponderance of the evidence is required under Section 10504-38, General Code, in order to warrant the court to probate a claimed lost or spoliated will.

"The reference to a will and its date in a codicil executed in due form is supporting evidence in an action to probate an allegedly lost will that at the time of the execution of the codicil the maker thereof at least thought that she had an executed last will and testament.

"Even though the evidence in an action to probate a lost will supports the existence of the will at a subsequent date at which the testator executed in due form a codicil referring to the will and the date thereof, where there remains an interim of several years between the execution of the codicil and the death of the testator during which she had the mental capacity to make a will, a presumption exists that the will was destroyed by the testator."

Therefore, we must conclude that the codicil demonstrated only that there was a valid will in existence at the time the codicil was executed and not necessarily thereafter.

But since the will and codicil were in existence on January 31, 1957, and the mutilation occurred sometime thereafter, but before May 28, 1958, what was the effect of the statement of the testator's attorney on the May date and the execution of the May 28, 1958 will which contained the declarations about the 1956 will still being in force and the new will reiterating the earlier will and codicil. We have referred above to the statements to the testator's attorney having no probative effect, so we need not give any further consideration to those statements at this time.

But what about the first three paragraphs referring to the 1956 will and the 1957 codicil which were so carefully written into the 1958 will, executed and attested to with all of the

formalities of law? Can these averments be given any consideration as to the wishes of the testator as expressed in the earlier will?

We think not. A jury found that the testator was not capable of making a valid will on May 28, 1958. And since the will described was invalid, any and all statements contained therein must be considered to lack the necessary force to attach validity to any prior will. The statements therein were of no greater value than mere declarations of the testator issued without the formality of the execution of a will, and it is well settled that mere declarations of an individual to devise or bequeath property have no power to dispose of such property after death.

What then did happen to the 1956 will of Alexander Wilson Steel? We believe that the evidence clearly shows that the will was in existence on January 31, 1957, but that sometime thereafter, but before May 28, 1958, Steel himself revoked that will and the codicil thereto by deliberately and carefully tearing off the signatures of himself as testator and the attesting witnesses per the authority of Section 2107.33, Revised Code, which provides: "A will shall be revoked by the testator by tearing, canceling, obliterating, or destroying such will with the intention of revoking it * * *"

What other way would an intelligent layman, indeed an intelligent lawyer use to revoke a will when he knew that there were executed copies of that will? By tearing off the necessary signature which made the will complete and regular on its face, he kept the will to refute claims that the original was lost or destroyed, thus announcing to the world that he had revoked his will.

This presumption of revocation is well stated in *In re Estate of Tyler*, 159 Ohio St. 492, a 1953 case, which held:

"Where a will is in the custody of the testator from the time of its execution until his death, and is found among his effects after his death with the entire surname of testator's signature torn off and with "X" marks in ink through his initials which are on the margin of each page of the will, it will be presumed that the will was mutilated by the testator with the intention of revoking same.

"In such case, to establish a claim that the mutilation occurred subsequent to the death of the testator, the evidence must

satisfy the mind of the probate judge, and to establish a claim that the mutilation was made by some one other than the testator before his death and without his knowledge, the evidence must be clear and convincing.''

Therefore, it can be seen that the law requires the Steel will to be presumed to be revoked and further requires clear and convincing evidence to overcome this presumption. Since there was no such evidence, it follows that the revoked 1956 will and the codicil thereto cannot be admitted to probate.

Counsel for the second wife of Alexander Wilson Steel have agreed that *In re Estate of Lyons*, 166 Ohio St. 207, a 1959 case, should control in considering the law relating to the instant case. However, the *Lyons case* deals with a will which is complete and regular in appearance and it is obvious to this court that the 1956 will is not complete and regular in appearance inasmuch as the signatures of the testator and the attesting witnesses have been torn off. Therefore, the *Lyons case* does not apply.

Counsel for Mrs. Steel also urged us to consider Section 2107.33, Revised Code, a part of which has been recited above. We have given full consideration to that section of the law as has been indicated above, and found no application to this proceeding other than has been set for the above.

Mrs. Steel's attorneys also pointed to the *Will of Hathaway*, 4 Ohio St. 383, and *Will of Elvin*, 146 Ohio St. 448, which are cases dealing with the time and place to contest a will and which indicate to these attorneys that a proceeding to admit a will to probate should not concern itself with the validity of that will.

While that concept of law is entirely correct, nevertheless, Section 2107.18, Revised Code, requires that a will must be attested to and executed before it can be admitted to probate, unless it was a lost, spoliated, or destroyed will, and since the salient signatures have been torn from the 1956 will it cannot be considered to be executed and attested to and therefore cannot qualify for admission to probate, thus clearly removing the instant matter from purview of the cited cases.

Counsel for the children of Alexander Steel complain of several points of error in the decision of the referee, including a claim that the decision of the referee was not sustained by the

law and the evidence. Since this court is reversing the decision of the referee on the basis that the decision is indeed not sustained by the law and the evidence, it is not necessary to consider the further points of error suggested.

It is the decision, therefore, of this court that the decision of the referee shall be reversed and the instruments purporting to be the 1956 will and the 1957 codicil to that will of Alexander Wilson Steel do not qualify for admission to probate.

*Judgment accordingly.*