(694 P.2d 1325)
No. 56,192

IN THE MATTER OF THE ESTATE OF LEONARD METTEE, DECEASED

Opinion filed February 14, 1985.

*Richard L. Reid* and *William E. Scott*, of Scott & Daily, Chartered, of Kansas City, for the appellant.

*Reid F. Holbrook* and *Robert L. Kennedy*, of Fallon, Holbrook & Ellis, of Kansas City, *Lewis A. Heaven, Jr.*, of Bennett & Heaven, of Shawnee, *Felix G. Kancel*, of Kansas City, and *Philip E. Lowery* and *Zack V. Chayet*, of Denver, Colorado, for the appellee.

Before FOTH, C.J., MEYER and BRISCOE, JJ.

MEYER, J.: This is an appeal by Frank VanLerberg (appellant), the executor and primary beneficiary of a will of Leonard Mettee, deceased, from an order which denied admission of the will to probate.

On April 14, 1980, Leonard Mettee made and executed a will. The will consisted of an original ribbon copy plus two photocopies. All three of these were executed with the required testamentary formalities. One of the photocopies was retained by the preparing lawyer, another photocopy was handed to the testator, and the original ribbon copy was filed with the Probate Court of Wyandotte County, Kansas.

The attorney who prepared the April 14, 1980, will testified that Mettee, some time between April 14, 1980, and May 8, 1980, contacted her and stated that "he wanted his will and he also wanted to make some few changes . . . ." She further stated that Mettee at that time gave her his copy of the will, the envelope in which it was contained, and a piece of paper. The

envelope and the piece of paper had written on them changes Mettee wanted to make in his will.

On May 8, 1980, Mettee withdrew his April 14, 1980, original will from the probate court. This document was not found among Mettee's personal effects after his death and it had not been left with his attorney. Mettee died December 21, 1982, without further contacting his attorney regarding his will. Appellant, lacking the original, attempted to gain admission of the will to probate by use of the two executed photocopies thereof. One Brenda Mettee, claiming to be decedent's daughter, and various other heirs of decedent, contested this attempt by appellant. Admission of the photocopies was denied and Mettee was adjudged to have died intestate. Appellant filed a notice of appeal on October 12, 1983.

On October 19, 1983, the trial court appointed a special administrator, and on October 20, 1983, appellant filed yet another notice of appeal, this time contending the trial court lacked jurisdiction to appoint a special administrator because the case was appealed and docketed before this court. On October 21, 1983, petitioner asked this court to stay proceedings pending appeal, and on October 25, 1983, respondent asked this court for involuntary dismissal stating that the order appointing the special administrator was not an appealable order. This court denied petitioner's motion on October 26, 1983, and on November 8, 1983, ruled on respondent's motion by stating that the court would "consider on the merits only issues properly before it," and that costs and fees would be determined with the merits. On November 4, 1983, petitioner filed a motion to vacate and set aside the judgment pursuant to K.S.A. 60-260(b)(2) based on newly discovered evidence. On January 9, 1984, the trial court denied the motion and refused to ask this court to remand the case. This court then ruled that the propriety of such issue, also, would be determined when the case was heard on its merits.

The first issue on appeal is whether revocation of Mettee's will should be presumed as a matter of law. Appellant contends that such a common-law presumption is not applicable to the instant case. The trial court ruled that the will is presumed to have been revoked because the ribbon copy thereof, known to have been in Mettee's possession prior to his death, was not found in his possession after his death.

The common-law presumption of revocation is followed by a

majority of jurisdictions and is recognized in Kansas cases concerning single wills. In *In re Estate of Thompson,* 226 Kan. 437, 442, 601 P.2d 1105 (1979), the court stated: "Where the facts disclose that a will, duly executed, was in the possession of the testator for some time immediately prior to his death and it cannot be found after his death, a rebuttable presumption arises that he did revoke the will or that he destroyed it with the intention of revoking it." We see no reason why the rule should be different in cases in which more than one will was executed. Nevertheless, we are not without authority even where such is the case. Thus, we note that in 1 Bartlett, Kansas Probate Law and Practice § 431 (rev. ed. 1953), the author says:

"As each of duplicate wills contains the will of the testator, a revocation of either is a revocation of his will, and thus revokes both. The rule seems to be well established, when a will is executed in duplicate, that each is regarded as the original and that a revocation of either is a revocation of both.

"The rule generally followed by courts where the probate of duplicate wills has been considered is that where the duplicate copy retained by the testator is not produced or its absence satisfactorily accounted for, the other copy may not be admitted to probate as the testator's last will and testament, for the reason that the presumption of revocation arises from proof of possession of the paper by the testator before his death and its unaccounted for absence thereafter, and the revocation of the duplicate copy retained by the testator necessarily constitutes a revocation of the copy in the custody of another person."

There is no merit to appellant's contention that the Kansas Probate Code abrogates the common law in this state. We find no indication that the legislature intended such a result. When that body has so intended they have not hesitated to pass specific legislation to such effect. Thus, K.S.A. 58-502 abolished the rule in Shelley's case, K.S.A. 58-504 abolished the rule of indefinite failure of issue, K.S.A. 58-505 abolished the rule in Wild's case, and K.S.A. 58-506 abolished the doctrine of worthier title. Furthermore, K.S.A. 77-109 provides that the common law "shall remain in force in aid of the General Statutes of this state" unless the common law is statutorily derogated. And, as was said in *Gonzales, Administrator v. Atchison, T. & S. F. Rly. Co.,* 189 Kan. 689, 695, 371 P.2d 193 (1962), "the common law of England has been the basis of the law of this state, and except as modified by constitutional or statutory provisions, by judicial decisions, or by the wants and needs of the people, it has continued to remain the law of this state."

Appellant next contends (following his reasoning that the common law is not applicable) that a will can be revoked only by the means stated in K.S.A. 59-611. This argument lacks merit. The presumption of revocation is not inconsistent with K.S.A. 59-611, and in the absence of any legislative intent to abrogate this common-law rule, the rebuttable presumption is part of the law of this state. See *Patrick v. Bedrick*, 169 Conn. 125, 127, 362 A.2d 987 (1975) for an explanation of this proposition.

Appellant also contends that the legislature, in amending K.S.A. 59-2228, intended to abolish the common-law presumption. There is no merit to this contention. First, a search of the legislative history of K.S.A. 59-2228 reveals no such intent. Second, appellant here confuses two separate concepts. Proving that a will is revoked and establishing a lost will are different issues. A will known to have been in testator's possession that cannot be found upon his death is presumed revoked. If the testator's intent to revoke is rebutted, the will is deemed lost and may be admitted to probate if the provisions of K.S.A. 59-2228 are satisfied. If the presumption is not overcome, probate is denied on the basis of the inferred intent to revoke. A revoked will cannot be established as a lost will. Therefore, the common-law presumption is separate from, and has no connection with, the lost wills statute, K.S.A. 59-2228.

Finally, in regard to the presumption of revocation, appellant calls our attention to *Matter of Estate of Shaw*, 572 P.2d 229 (Okla. 1977). We choose not to follow the *Shaw* case, not only because we do not agree with the reasoning of that case, but also because it is against the great weight of authority, as well as it being contrary to the common law and the law of this state.

Appellant's next major contention is that the trial court erred in holding that his evidence failed to rebut the presumption that the testator had destroyed his missing will with intent to revoke it.

When we view the evidence, as we must, in a light most favorable to the party prevailing below, it is clear that appellant failed to meet the burden of overcoming the presumption of revocation. In connection with this issue, however, one set of circumstances calls for special note. On November 4, 1983, almost a year after decedent's death and over three years following the event upon which appellant's claim is based, appel-

lant advised the trial court he had newly discovered evidence. This evidence consisted of one Betty Hall, who, appellant claimed, would testify that on a return trip from Mexico in December 1980 Mettee advised her that on a trip in July of 1980, his will together with other property had been stolen from his car. The trial court was asked to seek remand of the case, then on appeal, to the trial court for the purpose of receiving testimony as to this explanation of what happened to the original ribbon copy of the April 14, 1980, will. The trial court refused to seek remand of the case, and had this to say:

"Betty Hall had been a friend of the petitioner's sister for some twenty-five years. She had known the petitioner since May of 1980. She learned of Mr. Mettee's death approximately one month after it occurred. In talking to the petitioner's sister, she never mentioned the will. It was only after the trial that she deemed it important.

"[Mr. Mettee] felt that the petitioner was a good friend of his, yet he never mentioned the loss to him. In fact, he told no one else of any robbery. We know he was dissatisfied with the will he withdrew from the court. The purported robbery was some two and a half years prior to his death. After considering all of the evidence presented at the trial, the testimony of Betty Hall as found in her deposition would not be sufficient to grant the petitioner relief per K.S.A. 60-260."

Whether to grant a new trial based on newly discovered evidence is within the discretion of the trial court. *State v. Warwick*, 232 Kan. 232, 233, 654 P.2d 403 (1982). We see no abuse of discretion here.

We have not overlooked various other contentions of appellant, but conclude that none of them have merit.

In conclusion we hold that the common-law presumption of revocation is in effect in Kansas, that appellant did not present sufficient evidence to overcome the presumption, and that the trial court did not abuse its discretion in refusing to grant a new trial on the basis of newly discovered evidence.

Affirmed.