(753 P.2d 1296)
No. 60,569

In the Matter of the Estate of B. H. DAY, Deceased.

Petition for review denied June 22, 1988.

Opinion filed May 5, 1988.

*James J. McGannon*, of Regan & McGannon, of Wichita, for the appellant.

*W. J. Fitzpatrick*, of Independence, for the appellee.

Before ABBOTT, C.J., ELLIOTT, J., and THEODORE B. ICE, District Judge, assigned.

ABBOTT, C.J.: Tom Day appeals from the order admitting an unexecuted copy of B. H. Day's will to probate and the appointment of Crane Day as executor of the estate.

Crane Day, Howard Day, and Tom Day are the sons and only heirs-at-law of their father, B. H. Day. B. H. Day executed a will on December 10, 1979. Evidence is strong that the will was placed in B. H.'s safety deposit box. Crane and Howard had access to the box. Tom did not. The will and a subsequently executed codicil, combined, are more favorable to Crane and

Howard than to Tom; thus, it would be to their benefit that the will not be destroyed.

On June 3, 1985, B. H. executed a codicil to the December 10, 1979, will which set forth a specific deduction for advancements made to Tom and divided that amount between Crane and Howard, and changed a gift of two quarters of land from Howard to Tom. The original of the codicil was retained in the office of the lawyer who drafted it.

On April 29, 1986, B. H. executed a living trust instrument that was prepared by an Oklahoma lawyer and transferred most of his assets to that trust. A separate lawsuit is pending concerning the validity of that trust, and apparently that suit is awaiting the outcome of this appeal. It appears to us there are few assets to pass by the will if the trust is valid.

Evidence was introduced that the executed will was observed in the safety deposit box during the summer before the trust instrument was executed. The last entry on the bank's record of visits to the safety deposit box is that of B. H., made on the day the trust instrument was executed. After B. H.'s death, the safety deposit box was opened, and it was empty. The executed will was not produced, and no direct explanation of what happened to it was offered. The trust instrument did not invalidate the will.

The trial court held that the proof of a codicil to a will establishes the will without further proof if the codicil clearly and unmistakably refers to the will so as to prevent all doubts of its identity, citing 80 Am. Jur. 2d, Wills § 1004.

Tom Day argues that the trial court did not apply the presumption that a will known to be in the testator's possession which cannot be located after the testator's death has been revoked. *In re Estate of Mettee*, 10 Kan. App. 2d 184, 694 P.2d 1325, *aff'd* 237 Kan. 652, 702 P.2d 1381 (1985).

The trial court, in admitting the unsigned copy of the will, based its decision on K.S.A. 59-2228 and 80 Am. Jur. 2d, Wills § 1004. K.S.A. 59-2228 provides: "A lost or destroyed will may be established if its provisions are clearly and distinctly proved." 80 Am. Jur. 2d, Wills § 1004 states that proof of a codicil establishes a will if the codicil clearly and unmistakably refers to the will.

The application of K.S.A. 59-2228, with the common-law pre-

sumption, was addressed in *Mettee*. The court stated that the presumption of revocation and proof of a lost will were two distinct issues. The court held: "If the testator's intent to revoke is rebutted, the will is deemed lost and may be admitted to probate if the provisions of K.S.A. 59-2228 are satisfied. If the presumption is not overcome, probate is denied on the basis of the inferred intent to revoke." *Mettee*, 10 Kan. App. 2d at 187.

Accordingly, we must first determine whether the presumption applies. Although the record discloses the trial court's discussion of the effect of the codicil upon the presumption, there was no such determination in the journal entry. Furthermore, the cases underlying the general rule of 80 Am. Jur. 2d, Wills § 1004 do not relate to the case at hand.

In *Mettee*, the common-law presumption of revocation if an original will cannot be located after the testator's death was reaffirmed by the Supreme Court. *In re Estate of Mettee*, 237 Kan. 652. There, the testator executed the original will and two photocopies with the required formalities. After the testator's death, the original could not be located. The proponent attempted to admit the executed copy of the will to probate. The court held that the presumption of revocation must be rebutted in order to admit the will to probate. The will was denied probate.

There are no Kansas cases addressing the effect of a codicil upon the presumption of revocation. Other jurisdictions which have considered this issue report different conclusions. Some courts have held that an original codicil rebuts the presumption of revocation. In *In re Smith Estate*, 145 Mich. App. 634, 378 N.W.2d 555 (1985), *appeal denied* 424 Mich. 904 (1986), a copy of the will and the original codicil were admitted to probate. The court stated that under Michigan statutes a codicil is deemed an independent testamentary instrument. 145 Mich. App. at 638. In *In re Estate of Kuszmaul*, 491 So. 2d 287 (Fla. Dist. App. 1986), a copy of the will was found together with the original codicil. The court distinguished an earlier case, *In re Estate of Baird*, 343 So. 2d 41 (Fla. Dist. App. 1977), in which probate was denied when the original codicil was not accompanied by a copy of the will. *Kuszmaul*, 491 So. 2d at 288. As the original codicil and a copy of the will were attached, the *Kuszmaul* court deemed the presumption rebutted.

Other courts have held that the codicil is irrelevant to the presumption. In *In re Estate of Bowles*, 96 Ohio App. 265, 114 N.E.2d 229 (1953), the will could not be located, but the original codicil was found among decedent's documents. The court rejected the claim that destruction of the will without destruction of the codicil could not constitute revocation. *Bowles*, 96 Ohio. App. at 280-82. As the codicil was dependent upon the will for its effectiveness, the court deemed both were presumed revoked. 96 Ohio App. at 282. In *In re Steel*, 37 Ohio Op. 2d 70, 219 N.E.2d 236 (1966), the court followed *Bowles*. The court remarked that the execution of a subsequent codicil only proves the will was in existence at that time. The codicil is dependent upon the will and cannot be used to substitute for a will which is lost or destroyed after the codicil is executed. 37 Ohio Op. 2d at 73.

Here, the original codicil was never in the possession of B. H., whereas he had continuous possession of the original will. The codicil was intended to modify the existing will; it was not intended to be an independent addition to the will. In contrast to *Kuszmaul*, a copy of the will was not kept with the original codicil. Also, there are no Kansas statutes declaring a codicil an independent document, as in *Smith*. In addition, the codicil could not be read as an independent document.

As we view the trial court's decision, it relied solely on the fact that the codicil was in existence to overcome the presumption of revocation. We are satisfied the trial court can consider that the codicil is in existence and the facts concerning it in making its factual determination as to whether the presumption of revocation is overcome.

It is of some importance to consider that, in *Mettee*, the fact that two of the three executed will copies were in existence was not sufficient to overcome the presumption of revocation. If the failure to destroy all executed copies of a will is insufficient to overcome the presumption of revocation, it would seem inconsistent to hold that failure to destroy the codicil, standing alone, overcomes the presumption of revocation.

When the codicil was executed, it republished the will. The codicil's execution has no relevancy on the question of revoca-

tion of the will at some later date. The facts concerning its continued existence may, however, shed some light on the testator's intentions concerning the missing will.

Here, the codicil was left with B. H.'s long-time lawyer in Independence. B. H. had discussed a living trust with that lawyer, and he drew a trust instrument for B. H. that is similar to the one actually executed. B. H. did not execute that trust agreement. Instead, he went to Tulsa, Oklahoma, and had a trust instrument drafted which he subsequently executed. There is strong circumstantial and direct evidence in the record that he cleaned out his safety deposit box the day he executed the trust instrument and that his will was in that box. Obviously, there could have been some reluctance on the part of B. H. to go to his Independence lawyer's office to pick up and destroy the codicil, having rejected that lawyer's work and employed other counsel.

The proponents of the copy of the will did not present sufficient evidence as a matter of law to overcome the presumption of revocation. The trial court erred in holding the codicil overcame that presumption.

Having held the copy of the will to be inadmissible, the claim that the trial court erred in appointing Crane Day executor becomes moot.

Reversed and remanded with instructions to proceed with the estate as intestate and to appoint an administrator according to law.