Williams, J.
 

 In this case the will of Melissa C. Elvin, who died on or about April 14, 1944, at the age of 84 years, and an application for probate- were filed on April 20, 1944, in the Probate Court of Hardin county by the proponent of the will, Ej T. Sager, who is nominated executor and is the only person named as legatee or devisee therein. On July 5, 1944, that court found that the testatrix at the time of the execution of the will was not of sound mind and memory and was under restraint, and entered an order refusing to admit the will to probate.
 

 The proponent prosecuted an appeal to the Court of Appeals. That court affirmed the judgment of the Probate Court. Thereupon the judges of such appellate court certified the cause to this court for review and final determination, on the ground that their judgment was in conflict with judgments pronounced by Courts of Appeals on the same question, in the cases of
 
 McWilliams
 
 v.
 
 Central Trust Co.,
 
 51 Ohio App., 246, 200 N. E., 532, and
 
 In re Will of Fisher,
 
 67 Ohio App., 6, 35 N. E. (2d), 784. Those two cases, which the appellate court herein refused to follow, were grounded upon
 
 In re Will of Hathaway,
 
 4 Ohio St., 383. It may therefore be safely asserted that, if the pronounce
 
 *450
 
 ments of this court in the latter case are still deemed sound and are applicable under the statutes governing the rights of the parties herein, the only course open to this court is to reverse the judgments of the courts below.
 

 The
 
 Hathaway case
 
 was decided at the December term, 1854, and at that time Rule VI, which makes the syllabus the law of the case, was not in force. See Rules of Practice, 94 Ohio St., ix, and footnote. Therefore, in ascertaining the law established by the decision in that case, we may look beyond the syllabus to the opinion. The statutory provisions which governed the rights of the parties in the
 
 Hathaway case
 
 are found in an act relating to wills, 50 Ohio Laws, 297, effective June 1, 1852. The governing sections, which appear at page 299, read as follows:
 

 Section 12. “The said court shall cause the witnesses to such will, and such other witnesses as any person interested in having the same admitted to probate, may desire, to come before such court; and said witnesses shall be examined in open court, and their testimony reduced to writing, and filed. ’ ’
 

 Section 15. “If it shall appear that such will was duly attested and executed, and that the testator, at the time of executing the same, was of full age, and of sound mind and memory, and not under any restraint, the court shall admit the will to probate.”
 

 In the
 
 Hathaway case,
 
 Judge Bartley, in the opinion, quoted and commented upon Section 12, but made no reference to Section 15. After pointing out therein that a proceeding on an application to admit a will to probate is not adversary in character or one in which persons who deny the will’s validity are authorized to contest it, he used the following language:
 

 “If those who deny the validity of a will had the right to send for witnesses, and contest it on the application to admit it to probate, the statute would run
 
 *451
 
 into the absurdity of allowing a party two distinct courts, and two distinct modes of contesting and having an adjudication of the same fact; and the adjudication of the first tribunal, although not appealed from, no bar to the second proceeding. Before probate, a will is without any legal effect, and cannot even be made the subject of a proceeding to contest it. The form and solemnity of the proceeding to admit a will to probate, is required to show its due execution, and admit it to become a matter of public record. The evidence required, must show a
 
 prima facie
 
 case in favor of its validity, and that evidence is required to be reduced to writing, and made a part of the record. ’ ’
 

 The court reached the conclusion that, in a proceeding to admit a will to probate, the opponents of the will should not be allowed to introduce evidence against its validity, and that the proponents were entitled to have the will admitted to probate where the evidence made out such a
 
 prima facie
 
 case.
 

 The present sections of the General Code, which correspond to Sections 12 and 15 quoted above, are Section 10504-18 (114 Ohio Laws, 349, effective January 1, 1932) and Section 10504-22 (120 Ohio Laws, 650, effective September 20, 1943) and read thus:
 

 Section 10504-18. “The court shall cause the witnesses to the will, and such other witnesses as any person interested in having it admitted to probate desire, to come before the court.
 
 On request of such interested person, the court shall compel the attendance of any ivitness by subpoena as in civil cases.
 
 Such witnesses shall be examined,
 
 and may be cross-examined,
 
 in open court, and their testimony reduced to writing and filed.” (Italics ours.)
 

 Section 10504-22. “If it appears that such will was duly attested and executed,
 
 according to the law i/n force at the time of execution in the state where executed or according to the law in force at the time
 
 
 *452
 

 of death in this state or in the state where the testator was domiciled at the time of his death,
 
 and that the testator at the time of executing it was of full age, of sound mind and memory, and not under restraint, the court shall admit the will to probate.” (Italics ours.)
 

 The italicized part in the latter section (which is the part added by amendment) has no bearing whatever upon the questions under consideration and the remaining part does not differ materially from that used in Section 15. The only manner in which Section 10504-18 differs from Section 12 is in requiring the court on request of the proponents of the will to compel the attendance of the witness by subpoena as in civil cases, and in permitting the opponents of the will to cross-examine the witnesses in open court. (See italicized portion of Section 10504-18, General Code, as quoted above.) The statutes do not give opponent's the right to issue subpoenas or to call witnesses.
 

 At the time the
 
 Hathaway case
 
 was decided, those interested in preventing the probate of the will were not required to be notified of the hearing of the application. Since then legislation has been enacted, and Section 10504-17, General Code (114 Ohio Laws, 348), which applies to the instant case, provided:
 

 “No will shall be admitted to probate without notice to the surviving spouse and to the next of kin of the testator, if any, known to be resident of the state, in such manner and for such time as the Probate Court directs or approves.”
 

 Next of kin not residents of the state of Ohio were still not required to be notified. Obviously the intent of the statute was to give the spouse and resident next of kin an opportunity to attend the hearing and cross-examine the witnesses. The statutory requirement as to notice does not convert the hearing into a virtual contest of the will.
 

 After all the validity of a will can be contested only
 
 *453
 
 by a civil action brought pursuant to Section 12079
 
 et seq.,
 
 General Code, after the admission of such will to probate. In such an action the parties are entitled to a trial by jury. See Section 12082, General Code. On the hearing of an application to admit a will to probate, the Probate Court does not weigh the evidence, but merely considers the evidence favorable to the will’s validity to determine as a matter of law whether a
 
 prima facie
 
 case has been made. The opponents of the will are permitted to cross-examine the witnesses to preclude, if possible, the making of such a case. Were a contest permitted on the hearing of such an application, proponents and opponents would be affected dissimilarly by the final outcome. Proponents, aggrieved by an adjudication and final determination refusing admission of the will to probate, would have no remedy by civil action and would be deprived of the benefit of a jury trial; opponents, aggrieved by the admission of the will to probate, could contest again by civil action and would have a right to a jury trial in the second contest. The statutes governing the admission of a will to probate and its contest are
 
 in pari materia
 
 and so must be construed together. Connectively considered they do not show a legislative intent to provide for two separate contests in different courts.
 

 The pronouncements in the
 
 Hathaway case, supra,
 
 are sound and applicable under the statutes which govern in the instant case.
 

 We may summarize the principles applicable to a hearing on an application to admit a will to probate as follows: (a) No issue is presented for a contest between the proponents and the opponents of the will; (b) opponents of the will may cross-examine witnesses fully upon the dueness of attestation and execution, the mental capacity of the testator and undue influence, but are not allowed to call witnesses against the ad
 
 *454
 
 mission of the will to probate; (c) a
 
 prima facie
 
 case in favor of the validity of the will is all that is required, and when all the evidence shows as a matter of law that such a case is made out, the court must admit the will to probate, even though the evidence is conflicting.
 

 It remains only to inquire whether a
 
 prima facie
 
 case was made in Probate Court. The opponent of the will in her brief admits there was some evidence to show that the will was duly attested and executed; and that the testatrix at the time of its execution, was of full age and of sound mind and memory; but on the other hand maintains there was absolutely no evidence to show that the testatrix was not under restraint.
 

 The proponent called five witnesses and the opponent none. Each witness was cross-examined by the opponent.
 

 The evidence showed that Dr. Sager was testatrix’s friend; that he and his wife frequently took testatrix on rides in his automobile; that on September 30, 1940, the day the will was executed, his car was seen across the road in front of the office of the attorney at law who drew the will; that testatrix went alone to the office of the attorney and told him she wanted to make her will; that the attorney prepared the will in the form requested; and that he and his stenographer signed it as witnesses.
 

 At the trial both the attorney and stenographer expressed the opinion that the testatrix was under undue influence at the time she executed the will, and testified that their opinions were based upon rumors which they subsequently had heard. There was no evidence which showed that Sager participated actively in the preparation and execution of the will or exercised any control over the mind of the testatrix or used any means, fair or unfair, to influence the testatrix in mak
 
 *455
 
 ing the will. There was friendship between them but the relation of friendship does not invalidate a will made in favor of one’s friend.
 

 From this situation there arose the inference that the testatrix acted of her own volition and from motives of friendship for Dr. Sager and his family in making him the object of her bounty. Whether conflicting inferences arose on the question of undue influence is of no moment. A. merely conflicting inference that the testatrix was unduly influenced by Sager, if warranted, could not of itself impair or destroy a
 
 prima facie
 
 case, once made.
 

 It is not to be taken for granted that an opinion as to undue influence may be properly expressed or, if so, be properly based on rumors. Such testimony appears to have crept into the case without objection.
 

 Since an inference that the testatrix was not under restraint arises from the evidence and since the opponent of the will concedes that there was evidence of the other elements required to be shown by Section 10504-22, a
 
 prima facie
 
 case was made as a matter of law. Therefore the judgments of the courts below are reversed and a final judgment entered in favor of the appellant.
 

 Judgment reversed.
 

 Weygandt, C. J., Zimmerman, Bell, Turner, Matthias and Hart, JJ., concur.