IN RE WILL OF NASH, DECEASED.

(No. 24740—Decided June 30, 1976.)

Preble County Common Pleas Court, Probate Division.

*Messrs. Kirby & Powers*, for applicant.
*Messrs. Moorman, West & Pearson*, for proponent.
*Messrs. Bittle & Huber*, for opponents.

ZIEGEL, J. Lucille B. Nash died on November 6, 1975, leaving as her closest next of kin a group of cousins, one of whom on November 17, 1975, filed an application for letters of administration, averring that there was not to his knowledge any last Will and Testament. On December 1, 1975, Ronald W. Dwire was appointed Administrator. Dwire proceeded apace with the administration of the estate, filing his inventory and appraisement on December 30, 1975, which showed a gross estate of both real and personal property of almost $94,000.

According to testimony taken in the present proceedings, a couple of weeks later Dwire and one Paul Hans, a

tenant farmer for decedent, while preparing decedent's household goods for sale, found a paper writing which attracted their attention as a possible will of Lucille B. Nash. Dwire sent it to his attorney, and on February 3, 1976, via appropriate application, presented it for probate and record as decedent's last will and testament. After service of summons on necessary parties, on February 24, 1976 this application to probate came on for hearing. Thurston F. Bittle, an attorney at law, and Zelpha L. Fritz, his secretary, the subscribing witnesses on said paper writing, whose signatures thereon were not in any way disturbed, each testified as to the due and proper execution of this alleged will, and also testified that the document did not contain the black ink deletions now apparent at the time decedent signed the document and that each of them signed as witnesses.

Based on the physical appearance of the paper writing this court concluded that there was a presumption that testatrix had revoked the will in the manner provided in R. C. 2107.33, and accordingly found that the paper writing before the court was not entitled to admission to probate. An interlocutory order was entered, the matter set for further hearing, and additional notices served as provided in R. C. 2107.181. After a couple of continuances were granted, hearing was had on May 11, 1976, on which the matter now pends.

A detailed description of the paper writing captioned "Last Will and Testament of Lucille B. Nash" is appropriate. This writing is obviously professionally drawn. At the time it was presented for probate it contained eight separate black ink deletions, apparently made with a wide-pointed felt marking pen. These deletions are such that only by bending the paper so that light strikes it at just the right angle can the typing be seen under the black. Item 3 is completely black out, but dimly under the blacking can be seen: "I give and bequeath to William L. Mann, the sum of $2,500." Item 4 is a residuary clause, and the only name appearing therein is blacked out, "Noble D. Mann, or his issue," being dimly seen under the black. Item 5 appoints and empowers an executor and an alternative

executor. Here, the names of Noble D. Mann and James L. Mann are covered with black ink. The last blacking completely covers the signature of Lucille B. Nash, although it too is vaguely legible under the blacking. Neither Item 1, which *pro forma* directs payment of debts, etc., nor Item 2 which makes a couple of small charitable bequests have been disturbed. Likewise, neither the standard attestation clause nor the signatures of the witnesses are disturbed.

An unusual facet of this case is that the applicant for probate, Ronald W. Dwire, desires that probate be denied, since he and others in his class will benefit only by an intestacy. Consistent with his personal point of view if not with the demand of his application, Dwire's counsel has filed herein a "Memorandum in Support of Interlocutory Decree Denying Admission of Will to Probate." On the other hand, William L. Mann, who is not a relative of Lucille B. Nash, and who appeared at the instant hearing with counsel pursuant to required notice issued under R. C. 2107.181, for obvious reasons desires that the paper writing in question be admitted to probate sans blackouts, since he personally is named in blacked out Item 3, and he is also the only issue of his father, Noble D. Mann, the name blacked out in Item 4.

This case proceeds under the provisions of R. C. 2107.-11 *et seq.*, as those sections were in force prior to August 29, 1975 (Section 3, Amended Substitute Senate Bill No. 145, since decedent died before January 1, 1976). The application is one to admit an original will to probate and record, not a proceeding to establish and admit to probate a lost, spoliated, or destroyed will under the provisions of R. C. 2107.26 *et seq.* R. C. 2107.14 provides that "[t]he Probate Court shall cause at least two of the witnesses to a will, and other witnesses whom a person interested in having such will admitted to probate may desire to appear, to come before the court." R. C. 2107.18 provided that:

"The Probate Court shall admit a will to probate if it appears that such will was made by one of lawful age and attested and executed according to the law in force at the time of execution in the state where executed, or ac-

cording to the law in force in this state at the time of death * * * and if it appears that the testator at the time of executing such will was of sound mind and memory, and not under restraint."

It is to be noted that R. C. 2107.14, in addition to the witnesses to the purported will, authorizes the Probate Court in this type of proceedings to receive only the testimony of such other persons as may be presented by one interested in having the will admitted to probate. The one being expressed, the other is excluded, and accordingly it follows under this statute that the court may not receive any testimony offered by a person who is interested in having the document denied admission to probate as decedent's last will. At the May 11th hearing, Ronald W. Dwire, who, as indicated above, desires that probate be denied, presented his own testimony and that of others, which was received subject to subsequent ruling on the objections thereto. If the language of the statute is to be construed strictly, this testimony should not now be considered.

R. C. 2107.18, by its positive language, takes all discretion away from the Probate Court and mandates the admission of a will to probate if the court finds that certain designated, specific facts exist. In the case at bar, there is no question that at the time "such will was made" testatrix was "of lawful age"; and that such will was executed "according to the law in force in this state at the time of death" (R. C. 2107.03). It also "appears," this word indicating that weight of the evidence is not significant, that the testatrix "at the time of executing such will was of sound mind and memory, and not under restraint." R. C. 2107.18 does not require, as does R. C. 2107.27, dealing with the probate of a lost, spoliated, or destroyed will, that the court find that the will sought to be proved has been "unrevoked at the death of the testator * * *." Accordingly, it would appear that at the first hearing held on February 24, 1976, as to the admission of the paper writing in question to probate the court should have ordered its admission, and left those persons who claim it has been revoked by the various black-out deletions to their will contest iedy, under which circumstances the present hearing

under R. C. 2107.181 after the entering of an interlocutory order denying probate would have been unnecessary.

The foregoing describes the position taken here by William L. Mann. In support of his position he submits the leading case of *In re Will of Elvin* (1946), 146 Ohio St. 448, 66 N. E. 2d 629. In that case the opponents of the will attempted to raise the issue of validity of the will based on undue influence in an admission to probate procedure. The Probate Court, after hearing the testimony of five witnesses offered by the proponents, the witnesses also being cross examined by the opponents, concluded, apparently on the basis of weight of the evidence, that the evidence did not show that the testatrix there was not under any restraint at the time she executed the purported will, and therefore denied its admission to probate. The Court of Appeals affirmed, but the Supreme Court reversed. Without reference to the factual situation which gave rise to the case, the Supreme Court states the law in its syllabus as follows:

"Under Sections 10504-18 and 10504-22, General Code [now R. C. 2107.14 and 2107.18], the following principles govern the hearing on an application to admit a will to probate: (a) No issue is presented for a contest of the will between its proponents and opponents; (b) opponents of the will may cross-examine witnesses fully upon the dueness of attestation and execution, the mental capacity of the testator and undue influence, but are not allowed to call witnesses against the admission of the will to probate; (c) a *prima facie* case in favor of the validity of the will is all that is required, and when all the evidence shows as a matter of law that such a *prima facie* case is made out, the court must admit the will to probate, even though the evidence is conflicting."

In *Elvin*, after reviewing the record, the Supreme Court found that a *prima facie* case had been made out, even though the evidence was conflicting; thus, the reversal.

From the positive statement of the *Elvin* syllabus, it would appear that the case at bar ought now to be concluded in favor of admission of the will of Lucille B. Nash, deceased, to probate. Certainly, whether or not that will has been revoked presents an issue to be carried by its

opponents, not its proponents. Seven years after speaking so positively in *Elvin*, however, the Supreme Court decided *In re Estate of Tyler* (1953), 159 Ohio St. 492, 112 N. E. 2d 668, the case upon which the opponents primarily rely. In *Tyler*, the will presented for probate was mutilated by having the entire surname of decedent's signature torn off. The Probate Court denied probate; the Court of Appeals, basing its decision on the point of view taken in *Elvin*, reversed (see *In re Tyler* [1952], 109 N. E. 2d 301); and the Supreme Court reversed the Court of Appeals. So much of its statement of law, paragraph one of the syllabus, as may be applicable to the case at bar, follows:

"Where a will is in the custody of the testator from the time of its execution until his death, and is found among his effects after his death with the entire surname of testator's signature torn off and with 'X' marks in ink through his initials which are on the margin of each page of the will, it will be presumed that the will was mutilated by the testator with the intention of revoking the same."

In its decision, the Supreme Court makes no reference to *Elvin*, even though four of the justices who concurred in *Elvin* also concurred in *Tyler*. Accordingly it may be assumed that the Supreme Court determined it was dealing with two different kinds of cases. The question, therefore, that this court must decide in the case at bar, under its facts, is whether *Elvin* or *Tyler* applies. Are they distinguishable?

It must be noted that they both deal with the same subject matter—the admission of a will to probate. Two areas of distinction exist. In *Elvin*, the will sought to be admitted is regular on its face; in *Tyler*, it is mutilated. Secondly, *Elvin* involves an application to probate in the form applicable to ordinary wills, and the Supreme Court was concerned with the construction of what are now R. C. 2107.14 and 2107.18. While the pleadings filed in *Tyler* were also in ordinary form, the case did not proceed in that manner in the Probate Court. In *Tyler, supra*, at page 497, the Supreme Court acceded to the Probate Court's procedure: "Although application to probate the will was made pursuant to the statute applicable to wills regular upon their face, the hearing before the probate

judge was in accord with the above statutes; and the proponent acquiesced in offering the will as a spoliated one." The "above statute" referred to in the statement just quoted are Sections 10504-35, and 10504-36, and 10504-37 of the General Code, which are now R. C. 2107.26 and 2107.27, dealing with the admission to probate of a spoliated will.

Subsequently, in a single sentence paragraph, without analysis, in In re Estate of Lyons (1957), 166 Ohio St. 207, 141 N. E. 2d 151, the Supreme Court commented on the first distinction mentioned above, re the form and appearance of the will presented for probate, and rejected the applicability of Tyler and applied Elvin for the reason that the will being considered was regular in form and apparently complied with all formalities. In that case the application was for the ordinary probate of a will to which R. C. 2107.18 applied.

In re Estate of Steel (1966), 8 Ohio Misc. 133, 219 N. E. 2d 236 (Probate Court, Cuyahoga County), also considered the applicability of both Elvin and Tyler. The will sought to be admitted to probate there showed an even tearing of the signature page so as to remove the signatures therefrom without destroying or tearing any other part of the will. The Probate Court first concluded that the instrument in question, by definition, was not a spoliated will. Thus, it eliminated from consideration the applicability of R. C. 2107.26 and 2107.27, dealing with the probate of a lost, spoliated, or destroyed will. Nevertheless, it applied the presumption of revocation theory advanced in Tyler, the reason being given that R. C. 2107.18 requires that before a will may be admitted to probate it must be attested to and executed, and since the salient signatures have been torn from the will it cannot be considered to be executed and attested to. Counsel for the opponents in the case at bar advance the same reason, arguing that the blacking out of a signature is the same as tearing it.

The time frame of R. C. 2107.18, however, concerns the situation at the time the will was "made," and not the situation at the time it was presented. Its language is "if it appears that such will was 'made' etc." The past tense of "made" is significant. Once a will is "made" in the manner provided in R. C. 2107.03, it remains a will unless and until

12

it is revoked by one of the means provided in R. C. 2107.33. As has been pointed out earlier in this opinion, R. C. 2107.-18, as distinguished from R. C. 2107.27, does not require the Probate Court to find that the will was unrevoked at the death of testatrix. Accordingly, the condition of the instrument offered for probate under R. C. 2107.18 is immaterial, if from the evidence the court finds that it was "made" in the manner therein provided.

It follows that this court rejects the reasoning of the Cuyahoga County Probate Court in the *Steel* case, and not being bound by it, considers it non-persuasive.

The real distinction between *Elvin* and *Tyler*, therefore, is not in the condition or appearance of the instrument presented for probate, but rather rests in the statutes under which the case proceeds: *Elvin* applies to a procedure to admit an ordinary will to probate under R. C. 2107.14 and 2107.18, and *Tyler* applies to a procedure to admit a spoliated will to probate under R. C. 2107.26 and 2107.27.

The case at bar is obviously one under R. C. 2107.14 and 2107.18. The application for probate of the will is on a regular Barret Brothers printed form, the same form that is used for an ordinary will. Nothing in the pleading filed mentions anything about a spoliated will. While in argument and memoranda counsel have commented on the possible applicability of the statutes on the admission of a spoliated will to probate, there was no motion or request, either verbal or written, that this court consider the instrument presented for probate as spoliated. Accordingly, the court now holds that the rule in *Elvin*, not the rule of *Tyler*, applies to this case.

The interlocutory order denying probate to the instrument presented to the court as the last will and testament of Lucille B. Nash, deceased, is hereby set aside; it should never have been issued in the first place. The instrument will be admitted to probate and record. In arriving at this conclusion the court has ignored any testimony submitted by opponents to admission of the will to probate.

*Judgment accordingly.*