[Cite as *In re Estate of Shaffer*, 2019-Ohio-234.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re Estate of Joseph I. Shaffer

Court of Appeals No. L-17-1128

Trial Court No. 2015 EST 1856

**DECISION AND JUDGMENT**

Decided:  January 25, 2019

* * * * *

Zachary Norman, pro se.

Paul E. Croy, Sarah J. Corney and Kayla L. Henderson,
for appellee.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Zachary Norman, appeals from the November 4, 2016 judgment of the Lucas County Court of Common Pleas, Probate Division, which denied appellant's application to probate a purported will of Joseph I. Shaffer, who died July 20, 2015, at the age of 87.  For the reasons which follow, we reverse.

**{¶ 2}** On appeal, appellant asserts the following assignments of error:

1. The judgment entry holding that 2 witnesses are required to sign a will, under R.C. 2107.24 – Treatment of document as will notwithstanding noncompliance with statute – is contrary to the law.

2. The decision that the document Joseph I. Shaffer wrote was not intended to be his will is both contrary to the law and to the evidence.

3. Procedural errors during the application process and the September 9, 2016, hearing deprived a full opportunity for Joseph I. Shaffer's will to be admitted.

4. The magistrate's decision that voided a request under R.C. 2107.15 is inappropriate.

**{¶ 3}** This case arises out of the probate court's denial of appellant's July 19, 2016 application to admit to probate a 2006 document as the will of the decedent pursuant to R.C. 2107.24. The decedent's will executed August 11, 1967, had already been admitted to probate on September 15, 2015, pursuant to R.C. 2107.03. At the hearing on appellant's application the following evidence was admitted.

**{¶ 4}** Juley Norman testified how she and her son, appellant, developed a close relationship to the decedent. Norman first met the decedent when he treated her husband who was very ill. The decedent had a Ph.D. in psychology and was a specialist in sleep medicine. Norman and her husband owned a company and the decedent was also of assistance to the company during the husband's illness because of the decedent's

2.

statistical expertise. Later, Norman, who also did consulting work for physician practices, was retained by the decedent to assist him in forming a physician group and became more involved in his business.

{¶ 5} Norman, her son, and the decedent eventually became very close after Norman's husband died. The decedent began to refer to Norman as "his meaningful other." Although they maintained separate households approximately two miles apart, Norman testified she and the decedent called each other throughout the day, spent their evenings and religious holidays together, traveled together, and looked after each other until his death in 2015. Norman also testified she went with the decedent to doctor appointments, was involved in his business, worked with him on special work projects, and attended meetings with appellant's accountants and attorneys.

{¶ 6} Norman further testified the following events giving rise to the document at issue which was executed on the evening of December 22, 2006, when the decedent was approximately 78 years old. After having dinner together, the decedent called Norman because he was not feeling well and could not decide whether he should go to the hospital. Norman and appellant immediately went to the decedent's home and found he looked well.

{¶ 7} The decedent decided to go to the hospital after talking to his physician. Before leaving, however, he asked appellant to get him some paper. On the notecard he was given, the decedent wrote the document at issue, signed it, and gave it to Norman. The decedent read it out loud to Norman and asked her what she thought. The decedent

3.

told appellant to keep the document for his mother. The decedent was then taken to the hospital where he stayed for two days. He had elevated glucose levels and required a heart catheterization because of elevated enzyme levels.

{¶ 8} The 2006 document states as follows:

Dec 22, 2006/My estate is not/completely settled/All of my Sleep Network/ Stock is to go to/Terry Shaffer./Juley Norman for/her care of me is to/receive 1/4 of my estate/Terry is to be the/executor./This is my will./

/s/ Joseph I Shaffer

{¶ 9} Norman further testified the decedent asked appellant a few weeks later if appellant had put the "will" in a safe place. Norman questioned the decedent whether it was necessary to have a notary. The decedent declared it was fine based on his understanding of what others had done in his home state of Pennsylvania where his prior will had been executed. In 2014, Norman and the decedent were in the process of preparing their estate plans and again the decedent asked appellant if he had the "will."

{¶ 10} Norman also testified that despite the decedent's education and business dealings, and the fact that he had developed an extensive business after his wife's death, he had never updated his 1967 will prior to 2006. She testified the decedent did not like to talk about death and had never probated his wife's estate. She believed that the decedent would not have talked to an attorney about changing his will because it would have raised the issue of probating his wife's estate, which he wanted to avoid. Norman

4.

also testified that the decedent did not tell every advisor all of his business and liked to make his own decisions.

{¶ 11} Norman also testified that shortly before the decedent's death, Norman believed he was in good health because the doctor told the decedent he was doing well despite his ailments and the decedent continued to exercise and work. Likewise the decedent did not believe death was imminent because he was postponing a complicated cataract surgery.

{¶ 12} After the decedent's funeral, his son, Terry Shaffer, attempted to talk to Norman about whether the decedent had completed his estate planning. She testified she was emotionally unable to discuss the matter with Shaffer at that time and it was also customary not to do so in their religion, but she agreed to meet later. Meanwhile, she consulted with an attorney who advised she not discuss the 2006 document at that time. Norman felt uncomfortable with that advice and told the decedent's sons that she had something, but she could not discuss it. Her attorney took several months to review the document and then advised her to speak to other attorneys. She spoke to several attorneys who advised she could have a claim against the estate or could file the 2006 document as a will. Since the estate attorney had not returned phone calls from her attorney, she filed a claim against the estate on January 19, 2016, in order to protect her claim. After the claim was denied, she decided not to pursue it.

5.

{¶ 13} The court did not allow appellant to testify because he was acting pro se. The court questioned appellant enough to determine that he removed the 2006 document from a safety deposit box on July 18, 2016.

{¶ 14} Shaffer testified that he and his father started a company with another person in 1983. Prior to that Terry worked with his father at a sleep disorder clinic. Shaffer believed that if his father was going to prepare a will, he would have discussed the matter with Shaffer. He further testified that he reviewed his father's financial records and saw several checks payable to Juley Norman or Norman Associates.

{¶ 15} Opposing counsel objected to appellant cross-examining Shaffer because appellant was not a licensed Ohio attorney. Appellant argued he was the applicant and was acting pro se. After a discussion off the record, the court sustained counsel's objection and questioned Shaffer directly. Shaffer asserted he became aware of the 2006 document shortly before it was filed and his father never spoke of it despite having had other conversations about estate planning.

{¶ 16} Following the hearing, the magistrate, in a November 4, 2016 decision, found the 2006 document was not properly executed under R.C. 2107.03 and, therefore, could not be admitted to probate under that statute. Furthermore, the magistrate found that the 2006 document did not satisfy the requirements of R.C. 2107.24 even though the document was handwritten and signed by the decedent and the veracity of the witnesses to the document and surrounding circumstances appeared truthful. The magistrate found that clear and convincing evidence had not been admitted to establish that the document

6.

was intended to be the decedent's will because: 1) the decedent had not referenced his prior will in the 2006 document or to the witnesses, 2) the language of the 2006 document is contradictory because the decedent wrote his estate was not completely settled and yet he devised "all" of his property; 3) the decedent prepared the document while he was in the midst of a health crisis and may not have been able to form a clear intent; 4) Norman questioned the decedent as to the validity of the document as a will and yet no one at the hospital was asked to witness the 2006 document; 5) the 2006 document did not mention the decedent's other son or indicate how the remainder of the decedent's estate would be distributed.

{¶ 17} Finally, the magistrate held that R.C. 2107.24 does not revoke the requirements of R.C. 2107.03 of attestation and subscription. Therefore, R.C. 2107.24 is intended to provide for admission of nonconforming wills due to an inadvertent mistake in execution or unusual circumstances warranting a remedy rather than cases where the testator was ignorant of the law.

{¶ 18} Appellant objected to the magistrate's findings of fact and decision. In an April 25, 2017 judgment, the probate court rejected the objections and adopted and approved the magistrate's decision. Appellant appeals.

{¶ 19} Appellant argues in his first assignment of error that the trial court erred in holding that two witnesses were required to sign a will under R.C. 2107.24. Appellee contends appellant misreads the language of the judgment entry.

7.

{¶ 20} In its April 25, 2017 judgment entry approving and adopting the magistrate's decision, the trial court stated, "the document asserted to be a Will by application, on 7/19/2016 appears to be signed by the testator, but is not witnessed in writing (*See attached copy*), as required by RC 2107.24."

{¶ 21} We agree that the language of the opinion could be read to state R.C. 2107.24 requires witnesses to a document to be admitted as a will must have signed the document. However, it is clear that the probate court intended to state the lack of witness signatures is one basis upon which a document could fall within the parameters of R.C. 2107.24 because the court recited the statute in full and applied the proper clear and convincing evidence standard. Therefore, no prejudice resulted to appellant.

{¶ 22} Appellant also argues, and appellee concedes, that the probate court erroneously cited R.C. 2107.24(B), rather than R.C. 2107.24(A), as the basis for its standard of clear and convincing evidence. Nonetheless, we agree with appellee that the probate court applied the correct law and the erroneous citation did not prejudice appellant. Therefore, we find appellant's first assignment of error not well-taken.

{¶ 23} We address the remaining assignments of error out of order. In his third assignment of error, appellant argues that he was denied a full opportunity to present his case.

{¶ 24} First, he argues the probate court erred in issuing an interlocutory decree denying admission of the 2006 document to probate as this order was unnecessary.

8.

**{¶ 25}** R.C. 2107.18 requires that the probate court admit to probate a will which appears facially valid and properly executed or, after the court hears the testimony of the witnesses to the will, finds the execution of the will complied with the law. "[A]dmission of a will to probate establishes a rebuttable presumption of the validity of the will and its execution." *Mastro v. Glavan*, 11th Dist. Ashtabula No. 2010-A-0044, 2011-Ohio-3628, ¶ 46. However, if the probate court determines the will is not entitled to be admitted to probate, R.C. 2107.181 requires that the probate court issue an interlocutory order denying admission and proceed to conduct a hearing on the admissibility of the will.

**{¶ 26}** R.C. 2107.24 governs documents purported to be a will which are acknowledged as not in compliance with the statutory formalities of R.C. 2107.03. The statute mandates a hearing to determine if the document can be treated as a will and be admitted to probate. Therefore, we agree there is no need for an interlocutory order denying admission to probate prior to the R.C. 2107.24 hearing. Nonetheless, we find the issuance of the interlocutory order did not prejudice appellant.

**{¶ 27}** Second, appellant argues the probate court erred in not allowing appellant to give his direct testimony because he was acting pro se as the proponent of the 2006 document.

**{¶ 28}** R.C. 2107.24(A) requires that the proponent to the document to be treated as a will must establish, "by clear and convincing evidence," three facts before the probate court can admit the will as a validly-executed will. R.C. 2107.27(B) provides that "the proponents and opponents of the will shall cause witnesses to the will, and any

9.

other witnesses that have relevant and material knowledge about the will, to appear before the court to testify." The statute clearly permits the proponent to the will to examine witnesses. The statute does not provide for a right to cross-examine the witnesses. *In re Estate of Bohrer*, 12th Dist. Brown No. CA95-01-001, 1995 Ohio App. LEXIS 4480, *15 (Oct. 9, 1995); *In re Estate of Ayres*, Franklin P.C. No. 86431, 1940 Ohio Misc. LEXIS 430, *5 (Feb. 7, 1940) (applying G.C. 10504-37, predecessor to R.C. 2107.27). However, the probate court has the discretion to allow cross-examination, *Bohrer*; *Ayres*, and when permitted, both parties should have the same opportunity to cross-examine the witnesses.

{¶ 29} Furthermore, pro se litigants are to be treated the same as represented litigants. *Cox v. Dayton Pub. Schools Bd. of Edn.,* 147 Ohio St.3d 298, 2016-Ohio-5505, 64 N.E.3d 977, ¶ 6. Under R.C. 2107.24, the proponent has the burden to establish the document should be treated as a will. Therefore, we find that as a proponent of and a witness to the will, appellant should have been allowed to testify or, if necessary to control the proceedings, the probate court should have examined appellant regarding the execution of the 2006 document.

{¶ 30} However, we do not find appellant was prejudiced in this case because he was able to present the evidence necessary to establish the circumstances surrounding the execution of the 2006 document through Norman's testimony. Appellant has not shown that cross-examination of Shaffer would have added any relevant evidence because he was not a witness to the execution of the 2006 document or that appellant's testimony

10.

would had added additional, relevant evidence. Therefore, we find appellant's third assignment of error not well-taken.

{¶ 31} In his fourth assignment of error, appellant first argues the trial court erred in voiding a bequest to Norman pursuant to R.C. 2107.15 in a proceeding to admit the will to probate pursuant to R.C. 2107.24. Alternatively, he argues R.C. 2107.15 is not applicable to a document admitted as a will under R.C. 2107.24.

{¶ 32} Appellee argues that the probate court did not void the bequest to Norman. We disagree. The probate court made a specific conclusion of law that listing Norman as a beneficiary under the will on Form 1.0, Surviving Spouse, Children, Next of Kin, Legatees and Devisees must be stricken because R.C. 2107.15 required the bequest to be voided because she is a necessary witness to and beneficiary under the 2006 document/ will. Therefore, we find we must address the question of law presented.

{¶ 33} The right to dispose of one's property at death is a limited statutory right controlled solely by the General Assembly. *Kluever v. Cleveland Trust Co.*, 173 Ohio St. 177, 179, 180 N.E.2d 579 (1962); *In re Miller: Brandon v. City Natl. Bank & Trust Co.*, 160 Ohio St. 529, 117 N.E.2d 598 (1954), paragraphs two and three of the syllabus. Both R.C. 2107.03 and 2107.15 were designed by the General Assembly to work together to protect against the diversion of the decedent's estate from those who would take it under the statutes of descent and distribution except where the decedent clearly and deliberately expressed a contrary intention. If a person wishes to dispose of his or her property in a manner contrary to the statutes of descent and distribution, the person must do so in a will

11.

that fulfills the requirements of R.C. 2107.03. *Irwin v. Jacques*, 71 Ohio St. 395, 409, 73 N.E. 683 (1905). R.C. 2107.03 requires that a valid will be

> in writing, * * * signed at the end by the testator or by some other person in the testator's conscious presence and at the testator's express direction, * * * attested and subscribed in the conscious presence of the testator, by two or more competent witnesses, who saw the testator subscribe, or heard the testator acknowledge the testator's signature.

{¶ 34} When a will is presented to the probate court it must determine, as a matter of law, whether a prima facie case in favor of the validity of the will has been made (i.e., the will was executed according to law) and, therefore, must be admitted to probate even if the evidence is conflicting or there is evidence indicating fraud or forgery. *Wolfrum v. Wolfrum*, 2 Ohio St.2d 237, 241, 208 N.E.2d 537 (1965); *In re Will of Elvin*, 146 Ohio St. 448, 66 N.E.2d 629 (1946), syllabus. The validity of the will can only be challenged in a R.C. 2107.71 will contest action. *Id.* at 452-453. Admission of the will to probate is "prima-facie evidence of the attestation, execution, and validity of the will" in a R.C. 2107.71 will contest action and establishes "a rebuttable presumption of the validity of the will and its execution." *Mastro*, 11th Dist. Ashtabula No. 2010-A-0044, 2011-Ohio-3628, at ¶ 46. *Accord Jackson v. Estate of Henderson*, 8th Dist. Cuyahoga No. 93231, 2010-Ohio-3084, ¶ 30.

{¶ 35} When a witness subscribes, or signs, a testator's will in the presence of the testator, the witness is attesting that he saw the testator sign the will or heard the testator

12.

acknowledge his signature. *Whitacre v. Crowe*, 2012-Ohio-2981, 972 N.E.2d 659, ¶ 13 (9th Dist.); *Estate of Snell v. Kilburn,* 165 Ohio App.3d 352, 361, 2005-Ohio-7076, 846 N.E.2d 572, ¶ 35 (7th Dist.) (written attestation clause is not required). The Ohio Supreme Court has applied R.C. 2317.01 to define who can serve as a "competent witness" at the time of the execution of the will as anyone "except those of unsound mind, and children under ten years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." *Rogers v. Helmes,* 69 Ohio St.2d 323, 326, 432 N.E.2d 186 (1982), quoting *Blankner v. Lathrop*, 169 Ohio St. 229, 230, 159 N.E.2d 229 (1959), *overruled in part on other grounds* in *Rogers* at 327.

{¶ 36} Neither R.C. 2317.01 nor 2107.03 prohibit a person named as an heir under will from serving as a "competent witness" to the execution of the will. *Id*. Instead, the General Assembly provided in R.C. 2107.15, a "purging" statute, as follows:

> If a devise or bequest is made to a person who is one of only two witnesses to a will, the devise or bequest is void. The witness shall then be competent to testify to the execution of the will, as if the devise or bequest had not been made. If the witness would have been entitled to a share of the testator's estate in case the will was not established, the witness takes so much of that share that does not exceed the bequest or devise to the witness. The devisees and legatees shall contribute for that purpose as for an absent or afterborn child under section 2107.34 of the Revised Code.

13.

This statute requires that a devise or bequest to a witness must be voided in order for the witness to be a "competent witness" to testify regarding the execution of the will at the time of probate. *Rogers* at 327-329; Restatement of the Law 3d, Property: Wills and Other Donative Transfers, Section 3.1, Comment o (2003) (the requirement of a disinterested attesting witness was carried over from the English Statute of Frauds of 1677). The significance of R.C. 2107.15 is that it prevents an entire will from being declared invalid because of a devise or bequest to one of the witnesses to the will.

{¶ 37} Pursuant to R.C. 2107.60, a different process validates an oral will. The statute requires an oral will be "reduced to writing and subscribed by two competent *disinterested* witnesses." (*Emphasis added*). Therefore, at the time of execution, the witness to an oral will cannot have any interest under the will. *Vrooman v. Powers*, 47 Ohio St. 191, 24 N.E. 267 (1890), paragraph two of the syllabus. Even a later renunciation of any interest would be ineffective to save the oral will. *Id.* R.C. 2107.15 is not applicable to an oral will because a "disinterested" witness was required at the time of the execution of the will. *Id.* at paragraph three of the syllabus (applying former "[s]ection 5925 of the Revised Statutes, which provided: 'If a devise or bequest is given to a person who is a witness to the will, and the will cannot otherwise be proved than by the testimony of such witness, the devise or bequest shall be void.'").

{¶ 38} We now turn to the issue of whether R.C. 2107.15 is applicable to a document to be treated as a will under R.C. 2107.24. R.C. 2107.24(A) provides:

14.

(A) If a document that is executed that purports to be a will is not executed in compliance with the requirements of section 2107.03 of the Revised Code, that document shall be treated as if it had been executed as a will in compliance with the requirements of that section if a probate court, after holding a hearing, finds that the proponent of the document as a purported will has established, by clear and convincing evidence, all of the following:

(1) The decedent prepared the document or caused the document to be prepared.

(2) The decedent signed the document and intended the document to constitute the decedent's will.

(3) The decedent signed the document under division (A)(2) of this section in the conscious presence of two or more witnesses. As used in division (A)(3) of this section, "conscious presence" means within the range of any of the witnesses' senses, excluding the sense of sight or sound that is sensed by telephonic, electronic, or other distant communication.

{¶ 39} Appellant argues R.C. 2107.24 does not require the witnesses to be "competent witnesses," and, therefore, R.C. 2107.15 does not apply to a R.C. 2107.24 will. Instead, he argues, the General Assembly deliberately left off the phrase "competent witnesses" in R.C. 2107.24 to protect a testator's intent over statutory

15.

formalities and that the "clear and convincing evidence" standard ensures the validity of the document to be treated as a will.  We agree.

{¶ 40} R.C. 2107.03 and 2107.15 operate together to enable the probate court to make a preliminary determination of whether or not the decedent died intestate. Generally, these types of probate statutes were based on the English Statute of Frauds of 1677 and the Wills Act of 1837, both of which sought to set standards for assessing the prima facie validity of a will.  Restatement of the Law 3d, Property:  Wills and Other Donative Transfers, Section 3.1, Comment f (2003).  The probate court, as a court of limited jurisdiction, does not have authority to act outside its statutory or constitutional authority.  *Dumas v. Estate of Dumas*, 68 Ohio St.3d 405, 408, 627 N.E.2d 978 (1994), quoting *Saxton v. Seiberling*, 48 Ohio St. 554, 559, 29 N.E. 179 (1891).  Therefore, if the testator's written will does not meet the statutory requirements of R.C. 2107.03, the probate court is prohibited from admitting the will to probate and must distribute the estate pursuant to statutes of descent and distribution, irrespective of whether the testator's intent to make a will was clear.

{¶ 41} Along with R.C. 2107.03, the General Assembly enacted additional statutes to protect the testator's intent over statutory formality and prevent injustices.  R.C. 2107.60 allows the admission of an oral will to probate under certain conditions.  R.C. 2107.15 prevents the entire will from being invalidated when a required witness also received a devise or bequest and the subsequent bias would prevent the witness from

16.

being credible to testify regarding the execution of the will.  *See* Restatement of the Law 3d, Property:  Wills and Other Donative Transfers, Section 3.3, Comment b (2003).

{¶ **42**} More recently, a trend toward less formality has been prompted by the rise in non-probate transfers, which do not require the same formalities as a will.  Milligan, *The Effect of a Harmless Error in Executing a Will:  Why Texas Should Adopt Section 2-503 of the Uniform Probate Court* [sic], 36 St. Mary's L. J. 787, 797 (2005).  In 2006, the General Assembly enacted R.C. 2107.24 as a remedial, curative law to permit the probate court to treat a document which purports to be a will, but was not executed in the manner prescribed by R.C. 2107.03, to be treated as a properly-executed will.  *Mastro*, 11th Dist. Ashtabula No. 2010-A-0044, 2011-Ohio-3628, at ¶ 38-41.  R.C. 2107.24 shifts the focus from compliance with statutory formality to a factual determination of whether of the testator intended to create a will.  Milligan, 36 St. Mary's L. J. at 803; Glover, *Minimizing Probate-Error Risk*, 49 U. Mich. J.L. Reform 335, 346 (2016).

{¶ **43**} However, enactment of R.C. 2107.24 does not mean the probate court should abandon all compliance with the statutory formalities.  Milligan, 36 St. Mary's L. J. at 805.  Instead, R.C. 2107.24 is designed to supplement R.C. 2017.03 to prevent injustice where there is "harmless error."  Milligan, 36 St. Mary's L. J. at 803.  Errors relating to the basic validity of the will, such as the need for a written instrument or the testator's signature cannot be excused as harmless error.  *Id*. at 804-805.

{¶ **44**} Regarding the application of R.C. 2107.15 to a R.C. 2107.24 document to be admitted as a will, we agree R.C. 2107.24 does not require the witnesses must be

17.

"competent" or "disinterested." R.C. 2107.24 requires the probate court to weigh the evidence and determine the credibility of the witnesses to determine whether the proponent has established clear and convincing evidence that the decedent prepared the document, signed the document, intended the document to constitute his or her will, and the execution of the document was witnessed by two or more witnesses, which would require the document to be admitted to probate. *See In re Estate of Pittson*, 5th Dist. Stark No. 2008 CA 00014, 2009-Ohio-1862, ¶ 19; *In re Jordan*, 4th Dist. Pike No. 08CA773, 2008-Ohio-4385, ¶ 9. Therefore, the purpose of the purging statute, R.C. 2107.15, has been eliminated by the grant of authority to the probate court to evaluate the credibility of the interested witness and weigh the evidence. We find that if the probate court finds the testator truly intended to make a will, despite the failure to comply with the requirements of R.C. 2107.03 or the fact that a witness was also named as a beneficiary under the will, the court must admit the document to probate as a will.

{¶ 45} Therefore, we agree with appellant that the bequest to Julie Norman was not required to be voided in order for her to testify as a witness to the execution of the 2006 document. Appellant's fourth assignment of error is well-taken.

{¶ 46} In his second assignment appellant argues the probate court's finding that appellant had not presented clear and convincing evidence that the decedent intended the 2006 document to be his will was contrary to the law and evidence. The probate court found in this case that it was undisputed the 2006 document was handwritten by the decedent, signed at the end by him, and his signature was witnessed by two individuals.

18.

The probate court also found it "did not doubt the veracity of the witnesses as to their description of the events of that day given their longstanding relationship." Therefore, the sole issue was whether the decedent intended the document to be his will as required by R.C. 2107.24(A)(2).

{¶ 47} On appeal, we must uphold the trial court's findings pursuant to R.C. 2107.24 if there is some competent, credible evidence to support them. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17-22; *Pittson* at ¶ 22, citing *State ex rel. Celebrezze v. Environmental Ents., Inc.*, 53 Ohio St.3d 147, 154, 559 N.E.2d 1335 (1990); *Jordan* at ¶ 9.

{¶ 48} As with a will admitted under R.C. 2107.18, the issue at this stage is only whether the R.C. 2107.24 applicant can establish testamentary intent to permit admission of the document to probate as a will. *Estate of Hand*, 2016-Ohio-7437, 73 N.E.3d 880, ¶ 8 (12th Dist.) (admission under R.C. 2107.24); *In re Estate of Tyus*, 5th Dist. Stark No. 2006CA00348, 2007-Ohio-5814, ¶ 19 (admission under R.C. 2107.18). Testamentary intent to create a will (animo testandi) requires that, at the time of the execution of the document, the document language reflected at least some present desire to make a final testamentary statement of the testator's wishes and include a disposition of property based only on the condition that it was effective upon the death of the testator. *Hand* at ¶ 16, 37; *In re Estate of Ike*, 7 Ohio App.3d 87, 88, 454 N.E.2d 577 (3d Dist.1982); *In re Estate of Rickels*, 3d Dist. Paulding No. 11-03-09, 2003-Ohio-5125, ¶ 6; *In re Rosenbaum Trust*, 8th Dist. Cuyahoga No. 81213, 2003-Ohio-1830, ¶ 11. While no

19.

specific language is required to evidence testamentary intent, *Underwood v. Rutan*, 101 Ohio St. 306, 310, 128 N.E. 78 (1920), "[a] clear, unambiguous expression of testamentary intent in the document raises a strong (but not irrebutable) presumption that the document was executed with testamentary intent." Restatement of the Law 3d, Property: Wills and Other Donative Transfers, Section 3.1, Comment g (2003). Evidence of testamentary intent in a R.C. 2107.24 hearing, however, can also be derived from extrinsic evidence. *Hand* at ¶ 34.

{¶ 49} There are two cases applying R.C. 2107.24 which are instructive. In the first, *Tyus*, at ¶ 17-19, the purported will which stated, "I give all my early [sic] goods," was found to be the decedent's will because the testator presented the document as his will and the witnesses believed the decedent knew what he was doing and was mentally competent. In the second case, *Hand*, ¶ 25-26, the purported will was not admitted to probate. In that case, the last paragraph at the end of a love letter stated: "As my last will and testament, I appoint you the primary beneficiary of all I have and all I have worked for * * *." The appellate court found there was evidence to support the probate court's denial of the application to probate because the decedent was familiar with the formalities of a will, had written similar love letters in the past, and after writing the letter stated he would legally create a will later. *Id*. at ¶ 38.

{¶ 50} In the case before us, we begin by considering the language of the 2006 document. The decedent himself wrote the document and stated, "This is my will," and appointed an executor. These are clear and unambiguous expressions of testamentary

20.

intent to dispose of certain property at death. The decedent also stated "all of my Sleep Network Stock is to go to" Shaffer and that "Norman for her care of me is to receive 1/4 of my estate." While the decedent did not use the formal words of "give, devise, or bequeath," the phrases used are dispositive in nature and reflect a testamentary intent.

{¶ 51} There was also extrinsic circumstantial evidence to consider which reflected testamentary intent: the decedent thought of writing the 2006 document as he was contemplating going to the hospital because of sudden illness; his estate had significantly increased after his wife had died and years after his original will had been executed; the decedent had some opposition to attorneys and probate; the decedent requested appellant keep the document in a safe place and twice questioned whether the document was safely stored; and the decedent proclaimed the 2006 document was a valid will according to his knowledge of the law.

{¶ 52} When the document is read as a whole, with each individual clause read in the order transcribed, and with consideration of the surrounding circumstances, we find that the statement that "my estate is not completely settled," indicates the decedent believed, prior to that time, he had not completely dealt with his estate and intended to do so at that moment with directive language.

{¶ 53} In contrast, the probate court noted the circumstantial indications of a lack of testamentary intent. It noted that Norman questioned the validity of the will and never sought to have it properly attested and subscribed. We find Norman's actions are irrelevant to the issue of decedent's testamentary intent.

21.

{¶ 54} The probate court also noted that despite the fact that the decedent was highly educated, had previously executed a formal will, and had regular contact with attorneys, he never sought to execute a new formal will. Norman's testimony explains a possible basis for the decedent's behavior as well as the suddenness of the decision to create the 2006 document. Furthermore, the decedent's subsequent behavior of ensuring the 2006 document was safe and acknowledging his belief that it was valid indicates testamentary intent. The fact that the decedent could have accomplished the same result in a statutory formal way does not indicate in this case that the decedent lacked testamentary intent in creating the 2006 document. Furthermore, appellee's argument that the decedent never sought to make a later formal will is not relevant to the issue of whether the decedent had testamentary intent at the time he executed the 2006 document.

{¶ 55} The probate court highlighted the fact that the 2006 document did not revoke the decedent's prior will, mention the decedent's other son, or dispose of all of the remainder of the decedent's property. These actions, however, are not required to make a will; therefore, their absence alone does not demonstrate a lack of testamentary intent in this case. The exclusion of these items could reflect on the decedent's testamentary capacity, but capacity is not at issue in this hearing.

{¶ 56} The probate court also questioned the impact of the decedent's illness at the time he executed the 2006 document. This is also an issue of testamentary capacity, not testamentary intent. Generally, a testator's actions in the midst of a health crisis would be more indicative of testamentary intent to make a will than not.

22.

{¶ 57} Upon a review of all of the evidence, we find no evidence was admitted to support the probate court's finding that appellant failed to prove by clear and convincing evidence that the decedent intended the 2006 document to be his will and, therefore, it should have been admitted to probate pursuant to R.C. 2107.24.

{¶ 58} We also address the question of law addressed by the probate court as to whether R.C. 2107.24 is designed only for wills which were created to comply with R.C. 2107.03 but failed for some reason and not for wills which were created with ignorance of the statutory requirements. R.C. 2107.24 simply addresses wills which do not meet the formal standards of R.C. 2107.03. The General Assembly could have, but did not, limit the reason for the failure to inadvertent mistakes in execution or unusual circumstances rather than mere ignorance of the law. Where the statutory language is clear and unambiguous, we need not consider the legislative history or circumstances under which it was enacted. *State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, ¶ 6. Thus, the statute must be applied to any purported will which was not executed in conformity with R.C. 2107.03. We find the finding of the probate court to the contrary unsupported by the law.

{¶ 59} Appellant's second assignment of error is found well-taken.

{¶ 60} Having found that the probate court did commit error prejudicial to appellant and that substantial justice has not been done, the judgment of the Lucas

23.

County Court of Common Pleas, Probate Division, is reversed and remanded for proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

                                                JUDGE

James D. Jensen, J.

                                                _____

Christine E. Mayle, P.J.                                     JUDGE
CONCUR.

                                                _____

                                                JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.